EXCHANGE NATIONAL BANK OF CHICAGO, Plaintiff-Appellant, *v.* JEANETTE HARRIS *et al.*, Trustees, Defendants-Appellees.

First District (2nd Division)   No. 83—1887

Opinion filed June 26, 1984.

Mark L. Prager and John L. Hines, Jr., both of Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago, for appellant.

Stephen J. Spitz and Eugene J. Frett, both of Sperling, Slater & Spitz,

of Chicago, for appellees.

JUSTICE DOWNING delivered the opinion of the court:

This appeal involves the issue of whether the chancery division of the circuit court of Cook County properly denied plaintiff's request for injunctive relief. Plaintiff sought to restrain defendants from distributing any portion of decedent's trust pending resolution of plaintiff's two law division cases in which decedent was named as a party defendant.

Plaintiff Exchange National Bank of Chicago, in January 1983, filed two suits in the circuit court of Cook County, law division, one against Wilmette Partners and the second suit against Kenton Court Partnership to enforce payment on loans which plaintiff had made to two general partnerships. Decedent Maurice Harris, who died October 29, 1981, was a partner in both entities, and was alleged to be jointly and severally liable. His estate was named as one of the party defendants in the proceedings. The aggregate amount on the promissory notes owing to plaintiff was in excess of $800,000. The notes were executed by decedent and other partners in the two general partnerships.

During a deposition of Brian Harris, the executor of the estate of Maurice Harris, plaintiff discovered that decedent had executed a revocable trust agreement on April 1, 1976. In this agreement, decedent and his wife, Jeanette Harris, were named as co-trustees. Brian Harris, son of Maurice Harris, was appointed as successor trustee upon the death of Maurice. Article IV of the agreement provided, in paragraph 4.1, that:

"4.1 Debts, Taxes and Treasury Bonds. Upon the death of the Grantor, the Trustee shall, to the extent that the assets of the Grantor's estate (other than tangible personal property, property or sums specifically bequeathed or devised or property which in the sole judgment of the Trustee does not have a readily realizable market value) shall be insufficient, pay the Grantor's funeral expenses, *legally enforceable claims against the Grantor or his estate,* reasonable expenses of administration of his estate, ***." (Emphasis added.)

Article III of the agreement provided for the creation of a marital trust upon the grantor's death, and paragraph 3.7 states:

"3.7 Principal. The Trustee is hereby authorized to distribute to the Grantor's wife, at any time and from time to time during her lifetime, all or as much of the principal of the Mari-

tal Trust as the Trustee deems to be in her best interests."
The amount allocated to the marital trust was to be one-half of the value of the grantor's estate as finally determined for Federal estate tax purposes, less any amount which equals the value of all property and interests in property which had passed to the grantor's wife by operation of the trust terms, the grantor's will, insurance contracts, or otherwise.

In the section dealing with the residuary trust, article IV, the following provision was included:

> "4.5 Principal. The Trustee is hereby authorized to distribute to any one or more of the beneficiaries of the Residuary Trust, at any time and from time to time during their lifetimes, all or as much of the principal of such trust as the Trustee deems to be in the best interests of said beneficiaries; provided, however, that the Trustee shall make no distribution to the Grantor's wife of principal from the Residuary Trust until the trust estate of the Marital Trust shall be exhausted."

Plaintiff learned from the inventory filed by decedent's executor that the estate assets would be insufficient to pay the debts owed to plaintiff. According to the Illinois inheritance tax return, however, the trust has a corpus in excess of $1 million. In view of this knowledge, plaintiff initiated this lawsuit in the chancery division against defendants, co-trustees Jeanette Harris and Brian Harris.

Alleging that "[u]nless restrained and enjoined by this Court, pending the entry of final judgments in the Law Actions, defendant trustees, pursuant to provisions of the trust are able to jeopardize plaintiff's ability to enforce payment against the Trust of the said indebtedness owing to it, by distributing and depleting the entire corpus of the trust which would thereby undermine and destroy the value of any judgments entered in favor of plaintiff in the Law Actions," plaintiff claimed it would suffer irreparable harm unless the status quo was preserved by entry of injunctive relief. Plaintiff therefore requested that a temporary restraining order (Ill. Rev. Stat. 1979, ch. 69, par. 3—1) or a preliminary injunction (Ill. Rev. Stat. 1979, ch. 69, par. 3) be issued against defendants, prohibiting them from distributing all or any portion of the income and principal of the Maurice Harris Revocable Trust.

Defendants filed a motion to dismiss in which they claimed that plaintiff did not have a reasonable likelihood of success on the merits, since it failed to file a notice of claim against the estate within the six-month statutory period mandated in the Probate Act (Ill. Rev. State 1979, ch. 110½, par. 18—12); that equity would not afford the

relief being requested, since "equitable attachment" is abhorrent to the principles of equitable jurisdiction; that the trust only established, at best, a "guarantee of collection" and not a "guarantee of payment," and thus plaintiff had no current right against the trust; that because the two law division cases are against other individuals in addition to decedent, it was probable that plaintiff's claims would be satisfied without the estate's assets; and because plaintiff was not a third-party beneficiary to the trust agreement, it lacked standing to bring the action. Defendants further argued that plaintiff failed to establish the criteria needed to justify the grant of injunctive relief.

The trial court granted defendants' motion to dismiss, stating that "[t]his amounts to an equitable attachment, as far as I am concerned." It is from this order that plaintiff now appeals.

I

■ The sole reason upon which the trial court based its dismissal of plaintiff's complaint was that enjoining defendants from distributing the assets of the trust would amount to an "equitable attachment." The status of this principle in Illinois was explained in *Lewis v. West Side Trust & Savings Bank* (1937), 288 Ill. App. 271, 278, 6 N.E.2d 481, where this court stated that "there is no such thing as equitable attachment in this State and the theory of taking away the control of a person's property by means of an injunction for the purpose of anticipating a judgment which may or may not thereafter be obtained by a litigant is abhorrent to the principles of equitable jurisdiction." There, the appointed receiver of West Side Bank had filed a liquidation and dissolution suit. Various creditors filed bills to enforce alleged stockholders' liability. The trial court granted an order directing the receiver to withhold payment of any sum of money due or owing to any stockholder of the bank. Subsequently, Halsted Exchange National Bank, which held collateral securities located at West Side, moved to have this order vacated after the receiver refused to release the securities to it.

The court noted that "the purpose of this order is to retain the property of its stockholders in the possession of the bank or the receiver so that should a judgment be entered in this suit against a stockholder for his constitutional liability, complainants [creditors] could satisfy the judgment out of the property so retained by the receiver." (*Lewis v. West Side Trust & Savings Bank* (1937), 288 Ill. App. 271, 277, 6 N.E.2d 481.) The *Lewis* court cited *Phelps v. Foster* (1857), 18 Ill. 309, 310, wherein our supreme court stated that it was "not aware of any principle of equity jurisprudence which will justify

the issuing an injunction in such a case, to compel the parties to hold the goods pending a trial at law, to see if they will not be wanted to answer an execution upon a judgment which the complainant hopes to obtain."

A subsequent supreme court case noted that although the Civil Practice Act of 1933 had abolished the technical distinction between actions at equity and at law, a "real distinction" still existed between them and there was no authority for issuing a writ of attachment in the equity proceeding presented before it.[1] (*Dunham v. Kauffman* (1943), 385 Ill. 79, 85, 52 N.E.2d 143.) In *Dunham*, a creditor attempted to enforce its legal demands in equity by obtaining a writ of attachment against the trustees of funds held for the benefit of defendants as devisees and legatees. The court stated that chancery would not interfere in such a case until plaintiff had obtained a judgment because "[i]n order to show that there is no adequate remedy at law, it must appear that there is a judgment at law, execution issued and returned unsatisfied." 385 Ill. 79, 84.

In the most recent case dealing with the principle of equitable attachment which our research has observed, *American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 391 N.E.2d 532, the plaintiff initiated an action for rescission of a re-insurance agreement entered into with the defendants. Along with the filing of the complaint, the plaintiff requested permission to deposit with the court funds claimed by the defendants to be due and owing pursuant to the agreement. Under court order, the plaintiff deposited such funds, as well as monies the defendants had paid to it pursuant to the agreement.

The defendants in *American Re-Insurance* argued that the deposit orders should be reversed because they were in effect an equitable attachment. The court recognized that "[t]he use of this procedure, whereby a creditor seeks to restrain a debtor's control over property in its possession and thereby enforce by attachment a purely equitable claim that is not reduced to judgment, has been rejected in Illinois." (*American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 325, 391 N.E.2d 352.) In the situation presented before it, however, the monies held in the fund consisted of payments involved in the contract dispute, the disposition of which would be dealt with in the final order of the trial court. The appellate

---

[1]Supreme Court Rule 132 (87 Ill. 2d R. 132) provides that every complaint initiating any civil action shall contain in the caption the words "at law," "in chancery," or other designation conforming to the organization of the court into divisions.

court therefore reasoned that the trial court did not abuse its equitable discretion in preserving those monies until its final ruling. *American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 325, 391 N.E.2d 352.

In the case at hand, the funds being held by defendants under decedent's revocable trust are not designated as the loan funds involved in the law division cases. Plaintiff is merely seeking to preserve decedent's entire trust fund in order to secure satisfaction of its judgments should it be successful against decedent's partnerships. Plaintiff, however, claims that what it is seeking is not an equitable attachment, where a "ruthless creditor is attempting to attach the assets of a struggling individual in anticipation of a money judgment." Rather, plaintiff alleges that it is merely trying to preserve the status quo of funds in which it has a definable property right.

Plaintiff maintains that its property right in the trust funds arises from the language in the trust agreement which directs the trustees to pay "all legally enforceable claims against [decedent] or his estate" after the specific bequests and devises are made and in the event that the assets of the estate are insufficient. We cannot agree with plaintiff that this provision bestows upon it a protectable property right, as a creditor, in the trust funds. The case upon which plaintiff strongly relies and which it claims involves proximate facts to this case, *Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 262 N.E.2d 753, is inapposite. There, property and funds which were the subject of an intrafamily dispute involving the alleged breach of the trustees' fiduciary duties were placed into escrow pursuant to an agreement of the parties. After a complaint was filed to set aside the agreement, the trial court entered a temporary injunction restraining payment of any monies received into the escrow account. (128 Ill. App. 2d 460, 465.) Because the funds were originally placed into escrow as a result of defendants' alleged breach of fiduciary obligation, and were the subject of the relief requested, the appellate court held that the lower court had not only the discretion, but the duty, to attempt preservation of the funds in controversy "so that ultimate success by plaintiffs may not result in a meaningless victory." 128 Ill. App. 2d 460, 468-69.

■ Here, the trust funds are not the funds in controversy in plaintiff's law division cases and will not be the subject of the final adjudication of that litigation. In our opinion, the trial court correctly denied plaintiff's request for injunctive relief, based upon the reasoning that plaintiff's attempt to restrain distribution of the trust funds in which it has not demonstrated that it has a property interest, amounts to a request for an equitable attachment, which is not a

proper remedy in Illinois.

## II

Defendants contend that plaintiff's complaint is not factually sufficient to meet the standards required to obtain injunctive relief. As set forth in *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 499, 422 N.E.2d 1166, *appeal denied* (1981), 85 Ill. 2d 563, in order to obtain injunctive relief, there must be a sufficient showing by plaintiff that (1) it possesses a certain and clearly ascertained right which needs protection, (2) it will likely succeed on the merits, (3) irreparable injury will be sustained without the protection of the injunction, and (4) there is no adequate remedy at law. For the following reasons, we believe plaintiff has not demonstrated it would be entitled to injunctive relief. See *Schwalm Electronics, Inc. v. Electrical Products Corp.* (1973), 14 Ill. App. 3d 348, 352, 354, 302 N.E.2d 394.

## A

### CERTAIN AND CLEARLY ASCERTAINED RIGHT

■ Defendants claim that plaintiff has no standing to assert a contract right in the trust agreement, since it was not a named beneficiary in the document, and its position as a possible creditor of the estate does not make it a third-party beneficiary. The test for whether a party is a third-party beneficiary under a contract is whether the benefit is direct to him, or is but an incidental benefit arising from the contract. (*Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 414, 454 N.E.2d 723, *appeal denied* (1984), 96 Ill. 2d 566.) In this case, plaintiff asserts that because the trustees are to pay, to the extent that decedent's estate's assets are insufficient, "legally enforceable claims against the Grantor or his estate," that it is plainly an intended beneficiary of the trust agreement. An overall reading of the trust agreement, however, does not support this conclusion. The apparent purpose of the document was not to protect the possible creditors of decedent's estate, but to distribute his assets to his legatees and devisees according to his wishes, and then, only after this was accomplished, to pay any legally enforceable claims which his estate could not cover.

Plaintiff has not as yet obtained a judgment against the estate which is "legally enforceable" and which was not satisfied because of insufficient estate assets. It therefore cannot claim that it is entitled to relief under the trust agreement, assuming, *arguendo*, that it is even an intended beneficiary under the agreement. Plaintiff therefore

fails to show that it possesses a certain and clearly ascertained right which needs protection.

## B

### LIKELIHOOD OF SUCCESS ON THE MERITS

■ Plaintiff's law actions were initiated against all of the general partners of the two named partnerships. Under section 36(4) of the Uniform Partnership Act (Ill. Rev. Stat. 1979, ch. 106½, par. 36(4)), a creditor may file a claim against a deceased partner's estate. This claim, however, must be made within six months after entry of the original order directing issuance of the letter of office (Ill. Rev. Stat. 1979, ch. 110½, par. 18—12), and failure to do so bars the claim. (See *In re Estate of Hoheiser* (1981), 97 Ill. App. 3d 1077, 1081, 424 N.E.2d 25.) Defendants noted in their motion to dismiss that plaintiff did not comply with this limitation, and thus cannot be successful against the estate in an action at law. From the record, we note that decedent died October 29, 1981, that an estate was opened in the probate division in 1981, and the two lawsuits were not filed until 1983. Plaintiff has not demonstrated it has complied with the six-month requirement.

## C

### IRREPARABLE INJURY WITHOUT INJUNCTION

■ In this case, although plaintiff alleges that Maurice Harris' estate does not contain sufficient assets to cover the amount of indebtedness, the complaint does not set out facts to prove that it cannot receive satisfaction of the loans from the other named defendants in the suits. The estate of Maurice Harris is but one of seven defendants in case 83 L 357 and one of four defendants in case 83 L 360. Plaintiff's counsel stated at the hearing before the trial court that although plaintiff had obtained judgments against three other defendants in one suit, they did not have any assets. The complaint, however, does not contain such allegations. Therefore, the complaint does not satisfactorily demonstrate that plaintiff will suffer irreparable injury if the injunction is not granted.

## D

### ADEQUATE REMEDY AT LAW

■ As stated above (section B), plaintiff had a statutory remedy

for obtaining a judgment against the estate under the Uniform Partnership Act. Defendants also note that if the trustees wrongfully deplete the trust assets, plaintiff has a possible law action against the trustees, the beneficiaries, or both. Plaintiff's reasons for not having an adequate remedy at law are not articulated in the record.

In our opinion, plaintiff has failed to demonstrate the existence of those rights necessary to obtain the injunctive relief sought.

For the reasons set forth herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN, P.J., and STAMOS, J., concur.