ALAN P. KURTI *et al.*, Plaintiffs and Counterdefendants-Appellees, v. SILK PLANTS ETC. FRANCHISE SYSTEMS, INC., Defendant and Counterplaintiff-Appellant (Mark Dalen, Defendant).

First District (3rd Division)   No. 1—89—2034

Opinion filed June 27, 1990.

Kwiatt & Silverman, Ltd., of Chicago (Robert E. Haney, of counsel), for appellant.

Greenberg, Keele, Lunn & Aronberg, of Chicago (Nathan H. Lichtenstein and Kevin S. Besetzny, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

In July 1987, plaintiffs, individual and corporate franchisees of defendant, Silk Plants Etc. Franchise Systems, Inc., filed a six-count complaint for equitable and monetary relief against defendant and its former president, Mark Dalen, predicated on their alleged breach of the parties' franchise agreements. In July 1989, plaintiffs moved for a temporary restraining order prohibiting defendant's imminent sale of its assets, totalling $4.1 million, to Foliage Plus, Inc. (FPI). The trial court denied plaintiffs' motion. However, it did order defendant to de-

posit into an escrow account the sum of $71,885.04, from the sale, if any, of its assets to FPI "so that plaintiffs will be able to recover money damages if they prevail on their complaint." Defendant appeals the trial court's order.

In their complaint, plaintiffs sought, *inter alia*, rescission of their various franchise agreements with defendant and the restitution of all monies paid defendant, including their initial franchise fees, their "Continuing Services and Royalty" fees, their "Advertising and Development Fund" contribution and interest. The total amount of these payments to defendant by plaintiffs was not stated in the complaint.

In moving for a temporary restraining order, plaintiffs noted their requests in their complaint for restitution of the foregoing monies and for damages in excess of $15,000. Plaintiffs alleged that the sale of defendant's assets to FPI would involve all or substantially all of its assets and would render defendant a shell corporation unable to satisfy its potential liabilities to plaintiffs. At the hearing on the motion, plaintiffs' counsel asserted that their initial franchise fees totalled $52,500, their "Continuing Services and Royalty" fees totalled $17,231.17, their "Advertising and Development Fund" contributions totalled $2,152.87 and that interest thereon brought the sum total of these monies to "somewhere around" $71,885.04.

■■ ■ On appeal, defendant essentially asserts that section 4—101 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 4—101), providing for attachment in nine specific cases, is inapplicable to the facts of this case. Therefore, the trial court's order amounted to an equitable attachment of its property, *i.e.*, the restraining of defendant's control over property in its possession for the satisfaction of an equitable claim not reduced to judgment (see *American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 391 N.E.2d 532), in violation of the longstanding rejection of that remedy in Illinois. We agree and reverse.

Section 4—101 of the Code allows prejudgment attachment in nine specific cases. Plaintiffs asserted none of those nine specific cases as a basis for the temporary restraining order and the trial court found none of them in entering the contested order. See Ill. Rev. Stat. 1987, ch. 110, par. 4—101.

■■ Contesting only defendant's characterization of the trial court's order as an equitable attachment, plaintiffs assert that the order falls within the rule that where the funds which are the subject of the injunction are also the subject of the dispute, the use of an injunction restraining control is valid. It is valid, plaintiffs reason, because such a procedure does not amount to an equitable attachment. We dis-

agree. It is clear that, upon analysis, the case law supports defendant's, rather than plaintiffs', position.[1]

In *American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 391 N.E.2d 532, the plaintiff, seeking rescission of a re-insurance agreement with defendants, obtained the court's leave to deposit into escrow certain funds claimed due and owing by defendants and paid to plaintiff by defendants under the parties' agreement. Passing upon the defendants' challenge to the deposit orders as an equitable attachment, the court concluded that the orders did not resemble the injunction reversed in *De Beers Consolidated Mines, Ltd. v. United States* (1945), 325 U.S. 212, 89 L. Ed. 1566, 65 S. Ct. 1130.

In *De Beers*, the defendants had been enjoined from withdrawing, selling, transferring, or disposing of any property belonging to them in the United States. The Supreme Court found that the injunction dealt with matters wholly outside the issues in the case, dealt with property which could, under no circumstances, be dealt with in the court's final order and was, therefore, entered without proper jurisdiction or authority. By contrast, the deposit orders at issue in *American Re-Insurance* did not deal with funds which were irrelevant to the issues in the case and did not impose a blanket restriction on the defendants' use of their property. Moreover, the funds covered by the deposit orders were the amounts due from plaintiff to defendants and paid by defendants to plaintiff and were clearly subject to disposition by the court as part of its final order. The *American Re-Insurance* court also held that the orders at issue therein did not amount to an equitable attachment because the fund at issue was composed of monies whose past and future payment under the parties' agreement was in dispute and whose disposition would be dealt with in the trial court's final order.

In *Exchange National Bank v. Harris* (1984), 126 Ill. App. 3d 382, 466 N.E.2d 1079, the plaintiff bank, which had filed actions at law to recover loans to two general partnerships, also filed a suit in equity to enjoin any distributions from the trust estate of one of the partners of both partnerships. In doing so, the plaintiff alleged that, unless restrained and enjoined pending the entry of final judgments in the law actions, the defendant trustees would be able to jeopardize its ability to enforce payment against the trust estate of the indebtedness

---

[1]Parenthetically, we also note that the case law also belies plaintiffs' assertion at oral argument that the rule against equitable attachment applies only to claims for "general, speculative" damages.

owing to it by distributing and depleting the trust corpus. Defendant trustees would thereby undermine the value of any judgment entered in favor of plaintiff in the law actions.

Passing upon the trial court's dismissal of the equity action on the ground that an injunction would amount to an equitable attachment, the *Harris* court, after reviewing the case law on the subject, concluded that, in the case before it, the funds in the trust estate "are not designated as the loan funds" involved in the actions at law. (*Harris*, 126 Ill. App. 3d at 388.) The court further reasoned that the plaintiff was seeking to preserve the decedent's entire trust fund in order to secure satisfaction of its judgments were it successful against his partnerships. Moreover, the court distinguished *Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 262 N.E.2d 753, wherein property and funds which were the subject of an intrafamily dispute involving the alleged breach of fiduciary duties by testamentary trustees were placed into escrow by the parties' agreement. Specifically, the *Harris* court noted that, unlike that case, in the case before it the funds being held in trust were not the funds in controversy in the law actions and would not be the subject of the final adjudication of that litigation. As such, and because the plaintiff had not shown a property interest in the funds whose distribution it sought to enjoin, the court upheld the denial of the injunction as an equitable attachment. *Harris*, 126 Ill. App. 3d at 388-89.

■ Plaintiffs assert that, unlike the situation in *Harris*, the sums ordered into escrow here are the "very same funds" paid by plaintiffs to defendant and which plaintiffs seek to recover if their franchise agreements are rescinded and are the "same funds" in controversy between the parties in counts II and III of their complaint.

Plaintiffs' characterization of the trial court's order as dealing with the "same" and the "very same" funds at issue between the parties can be interpreted two ways. It can be interpreted as meaning that the order states, in effect, "place the *funds* which plaintiffs paid as initial franchise fees, continuing services and royalty fees, and advertising and development fund contributions under their franchise agreements with you, defendant, in escrow." If this is the meaning which plaintiffs intend by their characterization, they are clearly wrong as a matter of fact.

The order at issue states:

"Defendant[ ], Silk Plants Etc. Franchise Systems, Inc. are [*sic*] ordered to deposit into an interest bearing escrow account the sum of $71,885.04 from the sale, if any, of assets to Foliage Plus, Inc. Said sum is to be escrowed so that plaintiffs will be

able to recover money damages if they prevail on their complaint and said sum, therefore, is to remain in escrow until judgment is entered on [p]laintiff's complaint."

Clearly, the order cannot be given the first meaning which plaintiffs might intend. The order does not identify the sum of $71,885.04 as being the total of the various fees and contributions paid defendant under the plaintiffs' franchise agreements. More importantly, the order does not identify the funds out of which the amount stated is to be paid into escrow. That is, it does not state, for instance, that defendant is to pay the funds paid it by plaintiffs as and for initial franchise fees, continuing services and royalty fees, and advertising and development fund contributions under their franchise agreements into escrow. What the order merely does state is that defendant is required to pay into escrow a certain portion of the funds paid by FPI as the purchase price of defendant's assets. The order is not reasonably susceptible to the first meaning which plaintiffs might intend by their characterization of it.

The second meaning which plaintiffs might intend by their characterization of the trial court's order is that it states, in effect, "place the *sum* of the funds which plaintiffs paid as initial franchise fees, Continuing Services and Royalty fees, and Advertising and Development Fund contributions under their franchise agreements with you, defendant, in escrow." However, the fact that the amount ordered into escrow equals the amount of the monies of which plaintiffs seek restitution in their complaint, plus interest, is clearly insufficient for the order of deposit into escrow to avoid the "equitable attachment" label. The case law requires that such a court order be, at least, reasonably susceptible to the first meaning to which defendant's unwarranted characterization of the court order here is susceptible.

This conclusion is made clear by *Carriage Way Apartments v. Pojman* (1988), 172 Ill. App. 3d 827, 527 N.E.2d 89. *Pojman* involved a dispute between partners over the proceeds of the sale of real estate owned by their partnership. Pursuant to the defendants' motion for injunction, the trial court ordered the plaintiffs, who had received the proceeds of the sale, to deposit a certain sum, apparently representing the defendants' share of the proceeds but not so identified in the order, into an escrow account. In appealing the trial court's order, the plaintiffs contended that the order amounted to a prejudgment attachment. The defendants, similarly to plaintiffs here, defended the order as relating to "specific funds."

In deciding the issue, the court first noted, *inter alia*, the longstanding rule against equitable attachment in Illinois and then, citing

*American Re-Insurance,* stated, "However, where the funds which are the subject of the injunction are also the subject of the dispute, the use of an injunction restraining control is valid." *(Pojman,* 172 Ill. App. 3d at 838.) The court then concluded, contrary to the defendants' argument, that the trial court's order did not identify specific funds to be deposited in escrow. As such, the court found, it could not be said that the funds ordered to be deposited were related to the case. For those reasons, the court found the trial court's injunction order to be a *de facto* attachment which was invalid for its failure to enumerate any of the grounds specified in section 4—101 of the Code as a basis for its entry.

To distinguish *Pojman* and to bring the order at issue within the ambit of *American Re-Insurance,* plaintiffs assert:

> "In the present case, Plaintiffs sought to restrain the distribution of only those sums which were definable, ascertainable and would be the subject of the trial court's final adjudication. Unlike the injunction considered in *[De Beers],* the order here requiring a sum certain to be escrowed is not overbroad. The sum ordered deposited \*\*\* will be a part of the court's final adjudication of counts II and III of the complaint. The order did not impose a blanket restriction on [defendant's] use of its property or prevent it from carrying on normal business activities. The trial court merely earmarked $71,885.04 of the proceeds from the sale of [defendant's] assets from which the Plaintiffs may recover under the \*\*\* complaint."

■ Admittedly the trial court's order here does not impose a blanket restriction on defendant's use of its property, as the court noted in *American Re-Insurance,* and restrains the distribution of only such portion of the proceeds of any sale of assets by defendant which, we assume, equals the amount of the various fees and contributions plaintiffs paid under their franchise agreements. However, what plaintiffs nowhere address in their brief is what property right they have to any of the funds which defendant obtains from the sale of its assets to a third party, as opposed to the funds which defendant obtained from plaintiffs under their franchise agreements. Perhaps they do not explicitly address this question because the short answer is that they have no cognizable property right in such funds, as opposed to the funds which they paid defendant. (See *Exchange National Bank v. Harris* (1984), 126 Ill. App. 3d 382, 466 N.E.2d 1079.) In this regard, we find it unreasonable to presume that FPI will pay liquid assets to defendant for its liquid assets such as cash on hand or in bank accounts of one type or another. As such, it cannot be seri-

ously contended that the proceeds of the sale of defendant's assets represent the fruits of the funds paid defendant by plaintiffs such as to give plaintiffs a property interest therein.

Moreover, while the trial court's order ensures that the funds ordered deposited will be a part of the final adjudication of this case, plaintiffs do not address the broader question of why that result is proper. Given that they have no property interest in those funds, plaintiffs cannot legitimately make that argument. The funds ordered deposited in this case are part of the proceeds of the sale of what, we find it reasonable to presume, are defendant's nonliquid assets and are, thus, not a proper subject of the litigation between the parties. Moreover, notwithstanding that they may have been specifically identified in the order, they have no relationship to this case whatsoever and are not the funds in controversy between the parties.

In the final analysis, the trial court's order fails to pass all but two of the tests articulated in the case law to determine whether or not an attachment is equitable in nature. In addition to what we have already stated, we find that, as in *De Beers*, the order at issue deals with matters, *i.e.*, a sale of assets, wholly outside the issues in the case, deals with property which cannot, under any circumstances, be dealt with properly in a final order in this case, and was entered without proper jurisdiction and authority. Moreover, unlike the situation in *American Re-Insurance*, the fund (which term is not synonymous with the term "sum") at issue is not composed of monies whose ownership is in dispute.

In view of our conclusions, we need not decide whether plaintiffs otherwise satisfied the general requirements for injunctive relief.

For all of the foregoing reasons, we reverse the order requiring defendant to deposit into escrow $71,885.04 of the proceeds of any sale of its assets to Foliage Plus, Inc.

Reversed.

CERDA, P.J., and RIZZI, J., concur.