DENNIS BOWMAN, Plaintiff-Appellee, v. DIXON THEATRE RENOVATION, INC., Defendant-Appellant.

Second District   No. 2—91—0573

Opinion filed October 30, 1991.

Rolfe F. Ehrmann, of Ehrmann, Gehlbach & Beckman, of Dixon, for appellant.

No brief filed for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), defendant, Dixon Theatre Renovation, Inc., appeals the order granting a preliminary injunction against it. Defendant claims the injunction was an improper "equitable attachment" and not authorized under article IV of the Code of Civil Procedure (Attachment Law) (Ill. Rev. Stat. 1989, ch. 110, par. 4—101 *et seq.*). Plaintiff has not filed an appellee's brief in this matter, and we address the issues pursuant to the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133. We affirm on the basis that the injunction was authorized under the recently enacted Uniform Fraudulent Transfer Act (Act) (Ill. Rev. Stat. 1989, ch. 59, par. 101 *et seq.*).

Plaintiff, Dennis O. Bowman, originally filed a complaint on March 28, 1991, in which he sought the specific performance of a real estate contract. On October 25, 1985, defendant executed a contract for the purchase of the Dixon Theatre building from plaintiff. The contract was modified twice, but defendant never tendered the purchase price. Defendant has been in possession of the building since 1985 and has produced performances for the public in it. On April 11, 1991, after obtaining service of process on the defendant corporation, plaintiff requested a temporary restraining order. Plaintiff alleged

defendant had informed plaintiff that it would return its funds to the donors who pledged contributions and that tradesmen and plaintiff would not be paid. The trial court entered a temporary order restraining defendant from disposing of its assets for 10 days. Defendant moved to vacate the temporary restraining order, and plaintiff moved for the entry of a preliminary injunction to prohibit the disposal of assets pending the resolution of the underlying action.

During the hearing on these motions, plaintiff testified that he was the legal owner of the Dixon Theatre building and that he signed a contract to sell it to the defendant for $68,000. In September 1990, Linda Brantley, the current acting president of defendant, met with plaintiff and told him that defendant's fund-raising campaign was falling short of its goal. Also, she said that if the State of Illinois did not provide a grant, plaintiff would not be paid, tradesmen would not be paid, and the funds would be returned to the donors. Plaintiff asked the court to prohibit defendant from returning the donations but not to prohibit the payment of ordinary expenses. Plaintiff admitted signing another extension of the real estate contract which he did not return to defendant when he heard that the State grant was not forthcoming. Plaintiff admitted that a sentence of the contract stated:

> "Purchaser agrees that if it receives approval from the Department of Commerce and Community Affairs for the grant referred to above that the purchase price shall be completed on or about December 31, 1990."

Kenneth W. McMunn, an employee of plaintiff, testified that Brantley told him that if the grant was not procured, defendant would return all the funds obtained through donations from individuals. Brantley said that defendant's creditors and plaintiff would not be paid. These creditors could impose mechanics' liens on the property. Another of defendant's officers testified that defendant had over $90,000 in cash that could be disbursed for any reason, but that defendant was planning to return the money to the donors.

Plaintiff called Brantley to testify as an adverse witness. She told plaintiff that defendant would return the funds to the donors but had not done so yet. The funds to be returned were in the "contributions account," which held between $80,000 and $100,000. Defendant maintained a separate operating fund, which currently held around $3,000. There were no other accounts or assets. Brantley did not consider the funds in the contribution account to be the property of defendant because there was a "stipulation" to the funds. However, the bank account did not indicate the stipulation. There was only one other creditor of defendant other than plaintiff, and that was the architect who

was hired to plan the renovation; Brantley did not know the amount of his fee. The repairs to the building were fully paid from the operating funds, which were raised from conducting performances in the theatre. Defendant had advertised to solicit donations for the renovation. Brantley thought that at least some of the advertisements carried a notice that the donations would be returned if the State grant was not procured. The major advertisements stated that the donations would be returned if an insufficient amount was raised. Brantley was relatively certain some copies of such advertisements could be produced. Brantley thought that the theatre was being purchased on the condition that defendant procure the grant. A down payment had been paid to plaintiff.

When defendant called Brantley as its witness, she testified that defendant called a public meeting to explain its needs. At the meeting, a representative from defendant explained that without the grant defendant would be unable to complete the project. Defendant had applied for a grant of over $3 million. To qualify, defendant was required to raise $400,000 in matching funds and to own the building. Defendant introduced a pledge card, which Brantley testified was used to raise contributions. The example presented was a pledge of funds and was accompanied by a contribution. The donor wrote "Contingent upon receiving all the funds" on it. Other donors made statements of contingency as well, but Brantley had not searched the records completely to produce the number or total amount of such commitments. On cross-examination, Brantley admitted that not every contribution was accompanied by a pledge card.

The trial judge stated that, for the purposes of a preliminary injunction, it was inappropriate to determine whether all the funds were the contingent property of defendant. The court found that defendant had exercised complete dominion over the funds even if it had kept the funds segregated. The court held that it did not have to decide the character of each contribution at this stage of the litigation. The court determined that plaintiff showed a likelihood of prevailing on the merits of the underlying specific performance action. The court noted that specific performance was an equitable remedy and that this cause concerned real estate. The court found that plaintiff had established a clear right for which he needed protection. He would suffer irreparable harm, and there was no adequate remedy at law. If defendant returned the contributions, it would become insolvent. The return of the funds could constitute the preference of one creditor over another. In its written findings, the court found that the distribution of the contribution funds for no consideration could con-

stitute a "fraudulent transfer." The court ordered an injunction of the contribution funds to the amount of $80,000 until the underlying specific performance action was decided. It ordered that the funds be deposited in an interest-bearing account pending the resolution of the cause. The court further found that defendant would not be damaged by the injunction.

Defendant argues, as it did before the trial court, that the injunction comprised an equitable prejudgment attachment and was thus improper. On appeal from the grant of a preliminary injunction, an appellate court is to consider whether the circuit court abused its sound discretion in evaluating the relevant considerations and granting the preliminary injunction. *Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 7-8.

Attachment is a remedy by which a party's property is secured and held to satisfy a debt that the other party hopes to prove. (Ill. Rev. Stat. 1989, ch. 110, par. 4—101; *Carriage Way Apartments v. Pojman* (1988), 172 Ill. App. 3d 827, 837.) Section 4—101 of the Attachment Law permits attachment only in nine specific circumstances. Defendant correctly notes that this court has recognized that there is no such process as equitable attachment in this State. (*Pojman*, 172 Ill. App. 3d at 838.) " '[T]he theory of taking away the control of a person's property by means of an injunction for the purpose of anticipating a judgment which may or may not thereafter be obtained by a litigant is abhorrent to the principles of equitable jurisdiction.' " (*Pojman*, 172 Ill. App. 3d at 838, quoting *Lewis v. West Side Trust & Savings Bank* (1937), 288 Ill. App. 271, 278.) The court in *Lewis* stated:

> "If the property of an honest, struggling debtor could be tied up by injunctions upon mere unadjusted legal demands, he would be constantly exposed to the greatest hardships and grossest frauds, for which the law would afford no adequate remedy. *** [T]o prevent ruin to his business pending such litigation, he would be forced into unconscionable compromises involving losses he would be unable to bear." (*Lewis*, 288 Ill. App. at 278.)

Thus, the law of this State has consistently forbade such injunctions. (See *Exchange National Bank v. Harris* (1984), 126 Ill. App. 3d 382, 386.) The only exception, when the claimant has an interest in specific funds held by the debtor (*Kurti v. Silk Plants Etc. Franchise Systems, Inc.* (1990), 200 Ill. App. 3d 605, 609-11), does not apply here.

Defendant argues that because the court's order amounted to an equitable attachment, and none of the nine circumstances of sec-

tion 4—101 were found by the court, the injunction must be vacated. However, the trial court did find that defendant was about to commit a "fraudulent transfer." Section 4—101(8) of the Attachment Law provides that a creditor may obtain an attachment "[w]here the debtor is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors." Ill. Rev. Stat. 1989, ch. 110, par. 4—101(8).

■■ ■ Two types of fraudulent conveyances are recognized in Illinois. In fraud-in-fact cases, a creditor must show the debtor has a specific intent to hinder a creditor. (*Cannon v. Whitman Corp.* (1991), 212 Ill. App. 3d 79, 82.) In fraud-in-law cases, the law constructively infers fraud when the debtor conveys assets for inadequate consideration, rendering himself insolvent, during which he has existing or contemplated indebtedness. (*Cannon*, 212 Ill. App. 3d at 82.) Historically, however, a claim of constructive fraud has not been sufficient to justify the attachment of a purported debtor's property. (*Murry Nelson & Co. v. Leiter* (1901), 190 Ill. 414, 417.) Because the trial court based its finding of an impending fraudulent transfer on what historically has been considered constructive fraud, the injunction cannot be based on the Attachment Law.

●7, 8 However, Illinois has recently enacted the Uniform Fraudulent Transfer Act (Ill. Rev. Stat. 1989, ch. 59, par. 101 *et seq.* (Pub. Act 86—814, eff. Jan. 1, 1990)). Section 5(a)(2) of the Act defines a fraudulent transfer as one which the debtor makes without receiving a reasonably equivalent value and while the debtor was engaged in a transaction for which its remaining assets were unreasonably small. (Ill. Rev. Stat. 1989, ch. 59, par. 105(a)(2).) Section 6 of the Act provides an alternate definition for cases when the debtor does not receive a reasonably equivalent value for the transferred property and the debtor is insolvent or becomes insolvent as a result of the obligation. (Ill. Rev. Stat. 1989, ch. 59, par. 106.) Based on either of these definitions, we find no abuse of discretion in the trial court's determination that the return of the contributions to the donors would be a fraudulent transfer.

■ Section 8(a)(2) of the Act permits the attachment of property, in accordance with the Attachment Law, when the creditor proves a fraudulent conveyance. (Ill. Rev. Stat. 1989, ch. 59, par. 108(a)(2).) Section 8 does not distinguish between fraudulent transfers proved under section 5(a)(1) (Ill. Rev. Stat. 1989, ch. 59, par. 105(a)(1)), which requires proof of actual intent, and sections 5(a)(2) and 6 (Ill. Rev. Stat. 1989, ch. 59, pars. 105(a)(2), 106), which require proof similar to that of constructive fraud. Section 8(a)(3)(A) alternately provides that,

subject to the applicable principles of equity, the court may order an injunction against further disposition of property by the debtor. (Ill. Rev. Stat. 1989, ch. 59, par. 108(a)(3)(A).) Two courts have upheld injunctions entered pursuant to section 8(a)(3)(A) in cases where a prejudgment, purported debtor was about to convey assets. (*Cannon,* 212 Ill. App. 3d at 84; *Farm Credit Bank v. Lynn* (1990), 204 Ill. App. 3d 538, 540.) Neither case specified which category of fraudulent transfer was being enjoined.

We must next determine whether the granting of an injunction based on the constructive fraud provisions of section 5(a)(2) comports with general equitable principles, as required by section 8(a)(3). The nature of the injunction is similar to that of an equitable prejudgment attachment, which equity finds abhorrent, even when based on a constructive fraudulent transfer. Nonetheless, in those cases reversing *de facto* equitable attachment injunctions, the trial court failed to justify the injunction based on any ground specified by the Attachment Law, such as impending fraudulent transfers. (See *Kurti,* 200 Ill. App. 3d at 607; *Pojman,* 172 Ill. App. 3d at 839.) Here, the trial court made an explicit finding that defendant's proposed action would constitute a fraudulent transfer.

We find that the other considerations concerning equitable relief are also met in the case at bar. Before a court may order a preliminary injunction, the plaintiff must establish that he possesses a clearly ascertainable right which needs protection; that he will suffer irreparable harm without the injunction; that there is no adequate remedy of law for his claim; and that he is likely to succeed on the merits of his action. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 387.) The trial court must also consider the balance of the hardships imposed by the preliminary injunction (*Buzz Barton,* 108 Ill. 2d at 387) and tailor the injunction to preserve the status quo pending the outcome of the cause (*Pojman,* 172 Ill. App. 3d at 836-37).

██ Plaintiff established the threat of irreparable harm. Defendant's contribution fund is the only fund available to pay the purchase price of the theatre. Once the contributions are returned to the donors, it is unlikely that the donors will give the money to defendant. Plaintiff has no adequate remedy at law. Because of the uniqueness of real estate, a vendor may seek specific performance of a contract even though he seeks only money. (*Vincent v. Vits* (1991), 208 Ill. App. 3d 1, 4.) We also note the threat of mechanics' liens where a purchaser, such as defendant, has taken possession. The relief sought in the motion for the injunction was ancillary to plaintiff's claim for specific performance. Moreover, there is some Illinois authority autho-

rizing limited equitable relief based on an inadequate remedy at law when the judgment for money damages would be worthless due to the insolvency of the judgment debtor. See *Southern Fire Brick & Clay Co. v. Garden City Sand Co.* (1906), 223 Ill. 616, 628; *Grower Service Corp. v. Brown* (1990), 204 Ill. App. 3d 532, 536 (Barry, J., dissenting); *Johnson v. North American Life & Casualty Co.* (1968), 100 Ill. App. 2d 212, 218.

The court's determination that plaintiff nearly proved its cause of action supports the requirement that the plaintiff show a likelihood of succeeding on the merits (see *Buzz Barton*, 108 Ill. 2d at 382). The trial court did not have to decide if plaintiff would prevail over defendant's affirmative defenses that the contract contained a release and that defendant was not the true owner of the funds in the contributions account. We believe the trial court properly determined that defendant will suffer no harm to hold the funds in an interest-bearing account until the underlying dispute is resolved. Even if the owners of the funds were the donors, they will suffer no harm because they had no reasonable expectation of receiving the donations back if they represented true gifts. And the preliminary injunction against distribution of the funds was narrowly tailored to prevent an overly broad order. See *Cannon*, 212 Ill. App. 3d at 85; *Grower*, 204 Ill. App. 3d at 535.

Defendant is not a going concern which will be deprived of working capital. Thus, the inequities of equitable attachment do not apply to this defendant. Defendant expressed a desire to liquidate, and we are therefore not confronted with an honest but struggling debtor held hostage by a "ruthless creditor." (See *Harris*, 126 Ill. App. 3d at 388.) Instead, we agree with the trial court's finding of an impending preferential or fraudulent transfer. All the necessary elements for granting a preliminary injunction were present, and the evils of an equitable, prejudgment attachment were absent. There were no hardships upon defendant which would militate against granting the injunction so as to preserve the status quo. We hold that the trial court did not abuse its discretion by entering the preliminary injunction.

For the above reasons, the order of the circuit court of Lee County is affirmed.

Affirmed.

WOODWARD and McLAREN, JJ., concur.