In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1965

THE SOCIETY OF LLOYD'S,

Plaintiff-Appellee,

v.

ESTATE OF JOHN WILLIAM MCMURRAY,
deceased, judgment debtor,

Defendant,

and

HARRIS TRUST AND SAVINGS BANK,
executor of the Estate of John William
McMurray and trustee of John William McMurray's
trust dated September 18, 1996,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 6111--Blanche M. Manning, Judge.

Argued November 5, 2001--Decided December 11, 2001

  Before COFFEY, ROVNER, and EVANS, Circuit
Judges.

  EVANS, Circuit Judge.  Harris Trust and
Savings Bank, the trustee of a trust
created by John William McMurray, appeals
from the district court's order that it
pay a million dollar judgment that the
Society of Lloyd's/1 obtained against
McMurray. McMurray died on August 28,
1997, while Lloyd's was suing him in an
English court.

  Lloyd's is the regulator of an English
insurance market in London. It is not an
insurer. Individual underwriting members
of Lloyd's, known as "Names,"
independently assume insurance risks, and
each Name faces personal liability, much
like a partner in a general partnership.
See Indiana Gas Co. v. Home Insurance
Co., 141 F.3d 314, 316 (7th Cir. 1998).
McMurray was a Lloyd's Name.

  In the late 1980's and early 1990's, the
Names incurred underwriting losses of

more than $12 billion. Many could not obtain reinsurance. To resolve this crisis, Lloyd's introduced a reconstruction and renewal plan under which it created Equitas Reinsurance, a company that would reinsure the Names. As part of the plan, Lloyd's required each Name to pay a reinsurance premium by September 11, 1996.

Most Names voluntarily paid their premiums. Some, however, including McMurray, refused to pay. Lloyd's sued McMurray and the other noncomplying Names, and England's High Court of Justice found them liable for the reinsurance premium. Lloyd's obtained a judgment against McMurray on March 11, 1998, for $551,644.97 plus interest, which totaled about $827,000. The judgment, with interest, is now worth about $1 million.

One week after the Equitas premium payment deadline expired, but before Lloyd's filed suit against him, McMurray created a trust into which he transferred the bulk of his real and personal assets, worth about $3.8 million. McMurray appointed himself sole trustee and made the trust completely revocable and amendable. The trust instrument named McMurray as the sole beneficiary during his life, stating "the trustee shall pay to me, or on my signed order, all the net income and so much of the principle as I may from time to time direct in writing." In unmistakably clear language, as we shall soon see, the trustee was directed to pay McMurray's debts after his death.

On March 5, 1998, the circuit court for Cook County, Illinois, opened a probate case for McMurray's estate. The estimated value of McMurray's estate, which excluded the trust assets, was only $400,000./2 On March 20, 1998, Harris, acting as the administrator of McMurrary's estate (it was, of course, also the trustee), sent claims notices to Lloyd's and Equitas notifying them of McMurray's death. The notices stated that, under Illinois law, claimants have a limited period in which to file claims against the probate estate.

Lloyd's filed a registration of its English judgment in the United States District Court for the Northern District of Illinois on September 15, 1999. The

next day it filed a citation to discover assets in McMurray's estate and trust. Harris filed a motion to quash Lloyd's citation. The district court referred the case to Magistrate Judge Rosemond, who ruled that the English judgment was valid, conclusive, final, and enforceable. The judge granted the motion to quash with regard to the estate assets because Lloyd's filed its claim after the expiration of the 2-year period for probate claims. See 755 ILCS 5/18-12(b) (stating that all claims against an estate are barred 2 years after death). But the judge denied the motion to quash with respect to the trust, holding that its assets were not part of McMurray's probate estate and, therefore, not subject to the 2-year enforcement period for probate claims. The general statute of limitations for enforcing foreign money judgments is 7 years. See 735 ILCS 5/12-620; La Societe Anonyme Goro v. Conveyor Accessories, Inc., 286 Ill. App. 3d 867, 869-70 (2nd Dist. 1997).

The district court entered judgment for Lloyd's, which filed a motion for turnover of trust assets. In response, the district court clarified its order, ordering Harris to turn over trust assets to satisfy the judgment. The district court's turnover order is a final judgment, which we review de novo. See Denius v. Dunlap, 209 F.3d 944, 949 (7th Cir. 2000).

Harris argues that the district court should not have entered the turnover order without conducting a hearing on the trust's liability for the debt. The district court's initial decision, Harris argues, merely affirmed the magistrate judge's order granting discovery of the trust assets. Thus, Harris argues that the district court did not give it an adequate opportunity to argue the merits of the trust's potential liability. A district court may, however, summarily compel the application of discovered assets to satisfy a judgment. See Matthews v. Serafin, 319 Ill. App. 3d 72, 77 (3rd Dist. 2001); Mid-American Elevator Co. v. Norcon, Inc., 287 Ill. App. 3d 582, 587 (1st Dist. 1996). This, of course, is consistent with the sound principle that statutes authorizing a judgment creditor to discover the assets of a debtor or of a third party in order to enforce a judgment are to be broadly

construed. 735 ILCS 5/2-1402. See Chicago
v. Air Auto Leasing Co., 297 Ill. App. 3d
873, 878 (1st Dist. 1998). The Illinois
statute vests courts with broad powers
not only to order discovery, but also to
compel application of discovered assets
to satisfy a judgment. See id. (citing
Kennedy v. Four Boys Labor Serv., Inc.,
279 Ill. App. 3d 361 (2nd Dist. 1996)).

Additionally, it is clear from the
district court's initial opinion that
Harris did indeed argue the merits of the
trust's potential liability. Harris
argued that Lloyd's judgment was against
McMurray individually and not against the
trust. The district court dismissed this
contention because it was "wholly
unsupported." The magistrate judge's
order likewise indicated that Harris
argued that the trust was not liable
because it did not contain McMurray's
"property." Thus, it appears that Harris
raised arguments on the merits of the
trust's liability but simply failed, to
the satisfaction of the district court,
to support them adequately.

Harris repeats its argument here that
the trust is not liable because once
McMurray transferred his assets into the
trust, they were no longer his property.
The trust instrument provides, however,
in crystal-clear language, that at
McMurray's death "the trustee shall pay
from the residuary trust estate without
reimbursement my legally enforceable
debts." We construe trusts according to
their plain and unambiguous language. See
Dunker v. Reichman, 841 F.2d 177, 180
(7th Cir. 1988); Williams v. Springfield
Marine Bank, 131 Ill. App. 3d 417, 419-20
(4th Dist. 1985). Here, the trust
expressly directed Harris to pay
McMurray's legally enforceable debts.

Harris argues that the judgment against
McMurray is no longer legally enforceable
because the 2-year period for filing
claims against probate estates has
passed. The argument goes something like
this: (1) McMurray's trust directs the
trustee to pay McMurray's "legally
enforceable debts"; (2) for a debt to be
"legally enforceable" against McMurray,
it must be enforceable against his estate
because the trust assets are now separate
property owned by another entity; and (3)
because Lloyd's missed the probate filing
deadline, it does not have a legally

enforceable debt against McMurray's estate. This line of reasoning depends on a tortured reading of the trust instrument.

Although the judgment is no longer legally enforceable against McMurray's estate, that fact is irrelevant for purposes of enforcing it against the trust. The trust instrument, as we said, directed the trustee to pay McMurray's debts. It did not instruct the trustee to wait until McMurray's creditors sued to collect. Nor did it instruct the trustee to hide behind legal technicalities in an attempt to avoid paying valid debts. Therefore, Harris had a duty to pay Lloyd's upon McMurray's death once the English court entered judgment against McMurray. The debt became legally enforceable at that point. Harris ignored this duty.

Allowing Harris to escape the debt would not only violate the terms and the spirit of McMurray's trust but would also be inequitable. Harris had notice of the judgment well within the probate limitations period--which might not make a legal difference, but which certainly makes an equitable difference. This is not a situation in which a long-lost creditor seeks to enforce a forgotten debt years after the decedent's death, compromising the State of Illinois' interest in swift resolution of the decedent's affairs. Harris simply seeks to evade a valid debt of which it had prior and timely notice. Lloyd's notified McMurray of the reinsurance premium in July 1996. It obtained judgment against him in March 1998, more than a year before the probate enforcement period ran in August 1999. There is no question that the debt was legally enforceable throughout that entire period. Harris simply refused to pay it.

In support of its argument that the debt is not legally enforceable, Harris cites Exchange National Bank of Chicago v. Harris, 126 Ill. App. 3d 382 (1st Dist. 1984) , in which the court held that a trust provision similar to the one at issue here did not give the creditor a property right in the debtor's trust assets. See id. at 388. Exchange National Bank, however, is easily distinguishable from this case. There, as here, the creditor had not yet obtained a judgment

when the debtor died. See id. at 384. Hoping to go after the debtor's trust in the event of a judgment, the creditor tried to enjoin the trustee from distributing the trust assets until the court resolved the collection action. See id. The trial court denied the motion, holding that the injunction would have been an equitable attachment, a device that courts discourage because it unnecessarily deprives owners of control over their property in anticipation of judgments that may never materialize. See id. at 386. Here, Lloyd's does not seek an equitable attachment--it has already obtained a valid judgment against McMurray. Nor does Lloyd's seek an injunction, which is an extraordinary remedy requiring heightened scrutiny. It seeks only to enforce a valid judgment. The district court's judgment that it may do so against the assets of the McMurray trust is AFFIRMED.

FOOTNOTES

/1 This case does not raise the subject matter jurisdiction problem that we addressed in Indiana Gas Co. v. Home Insurance Co., 141 F.3d 314, 319 (7th Cir. 1998). There, we held that complete diversity did not exist between the parties because the complaint named as defendants "Certain Underwriters at Lloyd's, London" and "Certain London Market Insurance Companies." See id. at 316. Because these entities were not corporations, we treated them as partnerships for purposes of diversity jurisdiction, and since at least one Lloyd's Name was domiciled in the same state as the plaintiff, complete diversity did not exist. See id. at 319. Here, the plaintiff is the Society of Lloyd's, a corporation incorporated under the laws of England, and there is no question that diversity jurisdiction exists.

/2 The assets that McMurray's executor ultimately collected as estate property totaled about $850,000. See rec. doc. 27, ex. B.