Joseph P. Lewis et al., Complainants, v. West Side
Trust and Savings Bank of Chicago, et al., Defend-
ants.

Halsted Exchange National Bank of Chicago, Appel-
lant, v. Joseph P. Lewis and William L. O'Connell,
Appellees.

Gen. No. 38,906.

272

Opinion filed January 27, 1937. Rehearing denied February 16, 1937.

JOHN M. LEE and CARL M. LOOS, both of Chicago, for appellant.

GOLD & LIEBMAN, of Chicago, for appellees; CHARLES LIEBMAN and MAURICE R. KRAINES, of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This cause comes before us on an appeal by the Halsted Exchange National Bank of Chicago from certain orders which were entered in the superior court. The main proceeding in the trial court was a stockholders' liability suit filed on behalf of complainants and others to recover upon alleged causes of action against stockholders of The West Side Trust & Savings Bank of Chicago, for alleged liability imposed by Article 11, section 6 of the Illinois Constitution. From the evidence before us the facts appear as follows:

William L. O'Connell was appointed a receiver of the West Side Trust & Savings Bank on January 12, 1934, by the auditor of public accounts and on January 15, 1934, said O'Connell, as receiver, filed a bank liquidation and dissolution suit. Subsequently, several bills in chancery were filed by various creditors of said bank to enforce alleged stockholders' liability imposed by Article 11, section 6 of the Illinois Constitution and all such suits were thereafter consolidated

under case number 575398. A second amended and supplemental bill was filed by complainants December 7, 1934, and again amended on December 13, 1934.

On December 26, 1934, the complainants, after giving notice to all solicitors of record, but not to stockholders who had not appeared, moved the court to enter the order of December 26, 1934, which order petitioners have sought to vacate. The latter order directed William L. O'Connell, receiver of the bank, his successors, agents and attorneys and each of them until the further order of the court to withhold payment to any person who is or was a stockholder of said bank of any sum of money due or owing to such person by way of dividends or on claim of such person or as a creditor of said bank or for any other reason, and to withhold delivery to any person who is or was a stockholder of said bank and who is also the beneficiary or settlor of a trust of which said bank is trustee of all money, stocks, bonds, securities, personal property of real estate heretofore held by said bank as trustee, and to withhold delivery to any such person who is or was a stockholder of said bank of any securities, valuables or other property now in the control, custody or possession of said receiver and claimed by any such person to belong to him or in which such person may appear to have any right, title or interest except upon order of the court.

Paul Fernald was a stockholder, and prior to the entry of such order and prior to the appointment of William L. O'Connell, as receiver, had pledged various securities with the West Side Trust and Savings Bank of Chicago to secure his personal notes given to said bank. On or about October 4, 1932, Paul Fernald had executed an instrument and delivered the same to the Halsted Exchange National Bank, the terms of which were that he sells, assigns, transfers and sets over to the Halsted Exchange National Bank his entire inter-

est, whatever it might be in certain securities therein listed and equity which he may have, which securities are on deposit with the West Side Trust and Savings Bank as collateral to a certain loan evidenced by collateral note dated September 6, 1932, signed by said Paul Fernald, being $850 in amount, said assignment being made expressly subject to the rights of the West Side Trust and Savings Bank of Chicago to the said securities under the said collateral note held by it. The securities referred to in the instrument delivered to the Halsted Exchange Bank are the same as those that were previously pledged with the West Side Trust and Savings Bank.

At the time William L. O'Connell was appointed receiver, January 12, 1934, the said Paul Fernald had on deposit with the West Side Trust and Savings Bank a sum of money in excess of the indebtedness owed by him on his $850 collateral note payable to the said West Side Trust and Savings Bank, which had been reduced to $100.35, which indebtedness was entirely offset by such deposit. Upon demand being made upon him by the Halsted Exchange Bank, William L. O'Connell, receiver, refused to turn over the securities in his possession arising out of the pledge of Paul Fernald to said bank because he is restrained from delivering up these securities to the Halsted Exchange National Bank by order of court entered December 26, 1934, in this cause, which order is now before us for review.

In the bill filed in the trial court, the suit against the stockholders to collect their double liability, we cannot understand the theory upon which O'Connell, the statutory receiver, was made a party. He has nothing to do with the collection of the funds in the liability suit. The record does not show that the receiver O'Connell had entered his appearance in such suit or that he had been served with summons and just how

the court obtained jurisdiction of said receiver, the record does not show.

One has but to read the order of December 26, 1934, to see that it was improvidently entered. No charge was made in the bill that the defendants were insolvent, nor were there any facts alleged that any of the defendants were about to transfer their property to defeat their creditors, yet the order finds:

". . . that a large number of such persons are insolvent and have no other assets to satisfy any decree that may be entered against them herein for the payment of their respective liabilities to the creditors of said bank except such claims and such assets, and that a large number of stockholders who are creditors of said bank or have securities deposited by them with said bank as aforesaid or are beneficiaries of trusts of which said bank is trustee, as aforesaid, who now have sufficient assets to satisfy any decree against them which may be rendered herein, are about to conceal and transfer their assets, and it appearing to the court that it will be for the best interests of the creditors herein and William L. O'Connell, receiver of said bank, if before the said William L. O'Connell shall pay out to any such stockholders any moneys or other property in possession of the said William L. O'Connell and claimed by such stockholders, he shall make application to this court . . . ." No charge was made in the bill that anybody was about to conceal or transfer their assets nor were there scarcely any other facts as were found in the said order. Such indiscriminate orders and findings based on nothing but the imagination of the person who drew the order, do not aid in the administration of justice but on the contrary are a distinct obstruction. Findings by a court of record, especially where they are as comprehensive as those contained in this order, should be based upon allegations and legal proof.

According to the allegations of the bill of complaint filed by appellees in the instant case, a similar order was entered in cause number 34-S-452 entitled, *People ex rel. Barrett v. West Side Trust & Savings Bank.* If such an order was entered in that case, the validity of which is not one of the questions before us, we fail to see why it should be repeated in this case. We might say in passing, that chapter 16a, Ill. State Bar Stats. 1935, defines certain duties and gives to the statutory receiver of a bank appointed by the State auditor certain rights as well as imposing upon said receiver certain specific responsibilities in the administration of such closed bank. Many things the receiver is authorized by such statute to do, without the aid or intervention of a court, and some of his actions and duties require the consent and direction of a court. He is required to give a bond to insure the performance of his duties and is liable for any violation thereof, so that the so-called injunction is not imperative.

As for that part of the order which requires that the said William L. O'Connell, receiver, withhold payment of any and all sums due or which may become due and to withhold collateral securities on other property in his or the bank's possession belonging to such stockholders until the further order of court, we call attention to chapter 16a, par. 11, sec. 11, subsec. (c) Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 10.11, which reads as follows:

". . . Such receiver shall have authority to sue and defend in his own name with respect to the affairs, assets, claims, debts and choses in action of such bank. He shall also have the authority and it shall be his duty, under the direction of the Auditor, to surrender to customers of such banks their private papers and valuables left with said bank for safekeeping upon satisfactory proof of ownership. As soon as can rea-

sonably be done, he (shall) resign on behalf of said bank, all trusteeships, guardianships, conservatorships, and all appointments as executor and administrator, making in each case a proper accounting on behalf of said bank. He shall have the power and authority to redeem or take down collateral hypothecated by said bank to secure its notes or other evidences of indebtedness whenever the Auditor deems it to the best interest of the creditors of said bank so to do, and to do such other things and take such other steps from time to time under the direction and approval of the Auditor as may reasonably appear to be necessary to conserve the trust estate and secure the best interests of the creditors of said bank.''

We gather from the argument of complainants that the purpose of this order is to retain the property of its stockholders in the possession of the bank or the receiver so that should a judgment be entered in this suit against a stockholder for his constitutional liability, complainants could satisfy the judgment out of the property so retained by the receiver. In other words, such procedure and remedy as would be equivalent to an attachment at law.

In the case of *Phelps v. Foster,* 18 Ill. 309, the facts which are therein set forth are similar and the law as there defined is controlling in the instant case. The court at page 310, says:

''The injunction in this suit was properly dissolved, for three very good reasons. *First.* No such case was made by the bill, as would authorize an injunction. If the allegations of the bill are true, the sale from Thomas P. Foster to J. W. Foster was void, absolutely, as to creditors, and the complainants had an adequate remedy at law, by attaching the goods; but even if that had not been the case, I am not aware of any principle of equity jurisprudence which will justify the

issuing an injunction in such a case, to compel the parties to hold the goods pending a trial at law, to see if they will not be wanted to answer an execution upon a judgment which the complainant hopes to obtain. The bill was devoid of equity on its face. . . ."

In the case of *Shufeldt v. Boehm*, 96 Ill. 560, at page 564, the court said: "If the property of an honest, struggling debtor could be tied up by injunctions upon mere unadjusted legal demands, he would be constantly exposed to the greatest hardships and grossest frauds, for which the law would afford no adequate remedy. By taking his property out of his hands before the claim is due, or before its justice has been established by a judgment, in many cases would be to deprive him of the means of payment, and even of the means of defending himself against a vexatious and oppressive suit. In other cases, to prevent ruin to his business pending such litigation, he would be forced into unconscionable compromises involving losses he would be unable to bear. Moreover, such a rule as that contended for would be a constant temptation to selfish and avaricious creditors to endeavor, by the institution of such suits, to obtain an unjust advantage over other creditors, and, by reason thereof, litigation would be greatly increased, to the detriment of business generally, and to the ruin of many honest, struggling debtors. Every consideration, therefore, of public policy demands a strict adherence to the rule which forbids the institution of such suits." In other words, there is no such thing as equitable attachment in this State and the theory of taking away the control of a person's property by means of an injunction for the purpose of anticipating a judgment which may or may not thereafter be obtained by a litigant is abhorrent to the principles of equitable jurisdiction. As

Mr. Justice Caton said in his opinion in the *Phelps* case, which we have just quoted:

" . . . I am not aware of any principle of equity jurisprudence which will justify the issuing an injunction in such a case, to compel the parties to hold the goods pending a trial at law, to see if they will not be wanted to answer an execution upon a judgment which the complainant hopes to obtain. . . ."

In considering the order entered on the petition of the Halsted Exchange National Bank in which petition it sets up its claim to certain collateral and asks that the injunction be dissolved so far as it affects the receiver O'Connell and petitioner, we note that by the terms of this said order the prayer of said petition was denied on motion and the said petition was dismissed. This latter order fails to disclose any reason for not permitting persons who set up an interest in a subject matter over which the court has asserted jurisdiction, to appear in such court and ask that it be heard concerning its interests which were adversely affected by said injunctional order.

Courts were instituted for the hearing of claims and the adjusting of matters under controversy, and we think the petition in this case sets up sufficient facts concerning which the court should have been advised by requiring that an answer be filed to said petition and the petitioner should have been given an opportunity to present his claim at a hearing and have the court decide just what his rights in the matter were. We do not wish to be understood as holding that the stockholders' liability suit was a proper proceeding in which the petitioner, Halsted Exchange National Bank of Chicago, should have filed its claim to the collateral, but its petition for the purpose of having the injunction dissolved, in which suit the court had taken jurisdiction, should have been heard on the facts therein set forth.

We are not at this time passing upon whether the petitioner should later go into case General No. 34-S-452, *People ex rel. Barrett v. West Side Trust & Savings Bank,* in which case it appears from the meager information before us that the court has jurisdiction over all the assets of the bank including the collateral involved herein.

It has been suggested of record in this court that the said William L. O'Connell, Receiver, died on July 24, 1936. The record and briefs in this cause were filed in this court on May 13, 1936, and this cause was at issue prior to said O'Connell's death. It is the order of this court that, under the authority of *Citizens Securities & Investment Co. v. Dennis,* 236 Ill. App. 307, and authorities therein cited, an order be entered here *nunc pro tunc* as of May 14, 1936.

For the reasons set forth in this opinion, the order entered by the superior court of Cook county on December 26, 1934, is reversed, and the order entered by that court on February 28, 1936, dismissing the petition of the Halsted Exchange National Bank of Chicago, is also reversed and the so-called injunction or restraining order is dissolved.

*Order of December 26, 1934, reversed; order of February 28, 1936, reversed; and injunctional order dissolved.*

HEBEL and HALL, JJ., concur.