ALL SEASONS EXCAVATING COMPANY *et al.*, Plaintiffs and Counter-defendants-Appellees, v. EDWARD J. BLUTHARDT, Indiv. and d/b/a E.J. Bluthardt, *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (6th Division)    No. 1—90—0261

Opinion filed July 5, 1991.

Steven Messner, of Wilmette, for appellants.

Ronald G. Zamarin, of Des Plaines, for appellees.

JUSTICE LaPORTA delivered the opinion of the court:

This is an interlocutory appeal brought by defendants as a matter of right under Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). The defendants appeal the court's order of December 20, 1989, which denied defendants' motion to dissolve injunctions "implicitly created" by orders entered on April 7 and April 18, 1989. The court subsequently denied defendants' motion to reconsider on January 18, 1990, and that order is also appealed.

In pertinent part, the order of April 7, 1989, ordered that all net proceeds of a certain home equity loan to defendants in the principal sum of $15,000 be held by defendants' attorney in an escrow account until further order of court, except that $7,111.37 of these funds were to be repaid into the plaintiffs' company account *instanter*.

The order of April 18, 1989, required in part that a check in the amount of $7,111.37 be tendered to plaintiffs' company for repayment of "monies" owed by defendants, and that the balance of proceeds of the loan secured by defendants' Illinois real property be retained in defendants' attorney's client escrow account.

The defendants' motion to dissolve the "injunctions" created by the orders of April 7 and April 18 alleged that the sum of $7,888.63 has remained in the escrow account since April 18, 1989, and that these orders created an injunction which enjoined defendants from using assets they lawfully attained in taking out a mortgage on their Prospect Heights home. The plaintiffs have claimed that because their complaint alleges fraud with regard to the original home mortgage loan, these assets should remain frozen to protect their interest. Defendants alleged plaintiffs have failed to show irreparable injury if

these funds are released to the defendants. On December 20 the court ordered that the injunctions remain in full force and effect.

On appeal defendants raise these issues: (1) whether the injunctive orders of the court issued on April 7 and April 18 created an equitable attachment contrary to Illinois case law; and (2) whether the funds enjoined are subject to the dispute pending between the parties. Plaintiffs identify the issue as whether the court properly continued to restrain defendants' control of the proceeds of the encumbrance of the property which is the subject of count VI of the complaint.

Initially we consider the procedural history of the litigation. On January 13, 1989, plaintiffs, All Seasons Excavating Co., a corporation, and its alleged sole shareholders, officers and directors, William V. Roppolo and Carl D. Roppolo, filed a six-count complaint against its employee, Edward Bluthardt, and his wife, Donna Bluthardt. The complaint alleged that defendant Edward Bluthardt was an employee of plaintiff corporation charged with the operation of the business at the direction of William and Carl Roppolo and further charged with the operation and maintenance of the equipment owned by plaintiffs.

Count I alleged improper and fraudulent acts by defendants and alleged that even though plaintiffs instructed defendant to cease activities on behalf of the company as of December 31, 1988, and to return equipment, money, keys, and to cease the use of said equipment, ordered him to cease collecting money for company work performed, and to account for all assets and accounts of the company, the defendant nonetheless used equipment and materials for his own benefit, converted funds and failed to account to plaintiffs, and held himself out as authorized to collect All Seasons accounts. Count I prayed for an injunction to stop these alleged improprieties.

Count II sought an accounting of amounts collected and paid by or on behalf of defendant related to All Seasons business activities and assets and sought judgment for amounts due plus interest.

Count III sought damages for fraud and breach of duty and alleged that the defendants had breached a legal and equitable duty of trust owed to the corporation by fraudulent concealment of work performed using company equipment and by conversion of company funds. The complaint prayed for compensatory and punitive damages.

Count IV sought damages for conversion and prayed for both compensatory and punitive damages.

Count V sought damages for breach of defendants' alleged promise to repay loans and alleged that plaintiffs loaned to defendants from time to time sums totalling $12,006.66, which loan sums were

past due and unpaid. The complaint prayed for judgment in this amount plus interest.

Count VI sought injunctive relief and damages for fraudulent inducement and breach of an oral agreement. Plaintiffs alleged that in July 1987, defendants requested William Roppolo to co-sign a $70,000 note pursuant to a mortgage on their home in Prospect Heights. Plaintiffs alleged that as an inducement to Roppolo co-signing the note, defendants falsely represented that the loan was needed only until they sold their Michigan summer home and that the proceeds of the Michigan sale would be used to retire the $70,000 loan co-signed by plaintiff; that defendants failed and refused to sell their Michigan property and failed to keep the "co-signed note" in good standing; that the note is in default and therefore William Roppolo is liable to the lender for the face value of the note. Plaintiffs prayed for a preliminary injunction prohibiting assignment, transfer or encumbrance of defendants' Prospect Heights property, their Michigan property or any land trust or other trust in which title may be held, and further prayed for establishment of a constructive trust for the Michigan property and an order of sale with payment of proceeds into the constructive trust. The prayer also asked for judgment for compensatory and punitive damages.

Simultaneous with the January 13 filing of the complaint and before the defendants were served with summons, plaintiffs filed an emergency motion for temporary restraining order, without notice to defendants, to require that defendant cease to act for plaintiff company, be prevented from hiding or damaging the company's equipment and that defendants be prevented from encumbering or assigning their interests in the real estate in Prospect Heights and Michigan. On January 13, the court entered the temporary restraining order granting all requested relief, the TRO to expire in 10 days unless extended for good cause, and set the motion for hearing on January 23.

On January 17, defendants filed a counterclaim in three counts for declaratory relief, for an accounting based on plaintiffs' alleged fraud, and for injunctive and other relief. Count I, a "partnership declaratory action," alleged a verbal agreement in September 1986 among Carl Roppolo, William Roppolo and Edward Bluthardt to form a partnership for a land excavation business to be known as All Seasons Excavating; that each partner would have a one-third interest, with Carl and William Roppolo to make initial capital contribution to cover the purchase of equipment, and defendant to contribute his investment share out of his one-third of the company profits; that defendant was to be solely responsible for the actual operation of the business

for a salary in addition to his one-third share of profits. Defendant alleged that without his knowledge or consent, and sometime after September 1986, Carl and William Roppolo incorporated the business, assigning to themselves each a 50% share in an attempt to deprive defendant of his interest in the business. He alleged that on December 30, 1988, Carl Roppolo sent defendant a notice of intention to terminate the partnership. Defendant sought a declaration of partnership, an accounting from plaintiffs and payment of a sum of money or property as would be found due as his share of the partnership assets.

Count II sought injunctive relief to restrain plaintiffs from taking any action with regard to the business property, to prevent its sale or transfer without court supervision, and generally to maintain the status quo while this action was pending.

Count III alleged fraud and that the Roppolos represented to defendant that the business was to be operated as a partnership, and instead, without the knowledge of defendant, the business was incorporated with the intent to deprive defendant of his interest in the business and that defendant relied on these false representations to his detriment. Bluthardt prayed for judgment against counterdefendants; that counterdefendants be ordered to assign to defendant a beneficial interest in one-third of the company and its assets; and sought compensatory and punitive damages, attorney fees and costs.

On January 17, without notice to plaintiffs, defendants moved for and were granted a temporary restraining order, restraining plaintiffs from selling, disposing of, or assigning assets and equipment of All Seasons as prayed in the countercomplaint. Hearings on reciprocal motions to dissolve the temporary restraining orders entered on January 13 and January 17 were set for January 23.

Thereafter the temporary restraining orders were continued in full force and effect by a series of timely court orders. On February 8, plaintiffs' attorney Zamarin was appointed receiver to collect accounts receivable and to pay current and past due debts of the corporation; the temporary restraining orders were continued in full force and effect. The February 8 order also enjoined defendants from contacting any customer or other entity which had done business with the company and enjoined defendant from use of the company equipment.

On March 14, defendants were ordered to return to plaintiffs $8,300 transferred in January 1989 from a company bank account to their own personal bank account. The parties were ordered to begin the accounting and to commence discovery.

On April 5, defendants filed a motion for a 15-day extension for repayment of the $8,300 amount due and ordered repaid by the March

14 court order and noticed the motion for hearing on April 7. Defendants represented that they had applied for and obtained a $15,000 loan and that the money would be available by April 15.

On April 7, plaintiffs filed a motion for rule to show cause for defendants' failure to return the $8,300 to the corporation as ordered by the court.

On April 7, the court entered two orders. The first order provided: (1) the hearing on plaintiffs' motion for rule to show cause was continued to April 18; (2) all net proceeds of defendants' $15,000 loan were ordered to be paid over to defendants' attorney Messner to be held in the attorney's escrow account until further order of court, except that of this amount $7,111.37 was ordered to be repaid into the plaintiffs' company account immediately upon receipt of the funds; (3) defendants were given leave to hire an appraiser at their own expense without prejudice to a right to seek credit for same; and (4) records were to be made available to defendants provided they paid one half of copying costs. The second April 7 order directed the transfer of $1,118.63 from defendants' account at the First National Bank of Mount Prospect to the corporation's account. The court ordered that the corporate account identify the receiver as the only authorized signatory on the corporation account.

On April 18, the court ordered that the proceeds of defendants' loan secured by their Prospect Heights property was to be retained in the escrow account except for the sum of $7,111.37, which sum was ordered to be tendered to the plaintiff corporation for repayment of money owed by defendants. The defendants were ordered to produce listing agreements entered into for their Michigan property and to produce January 1989 bank statements. The case was set for trial in September 1989.

Thereafter a number of motions were filed and orders entered which have no bearing on the subject of this appeal. The trial was continued to a later date.

On October 30, defendants' motion to dissolve the injunction created by the April 7 and April 18 court orders was filed and set for hearing on November 14. In its October 30 order the court approved the sale of the company's excavating equipment for $112,000 and ordered the company loan with Midland Federal be repaid from proceeds with the balance of $17,471.41 tendered to the receiver for disbursement in accordance with prior court orders.

The record discloses no order entered on November 14.

On November 27, the court entered an order which took the defendants' motion to dissolve the injunction of the April 7 and April

18 orders under advisement pending written order to follow; gave defendants leave to file an amendment to their counterclaim *instanter*; gave defendants leave to file a motion to compel, a motion for continuance, and a motion to release funds *instanter*; gave plaintiffs leave to file motion for rule to show cause *instanter* (the record does not contain a copy of such motion); and set hearing on the motions for January 12, 1990.

On December 20, the court entered its memorandum opinion which denied defendants' motion of October 30 to dissolve the injunctions and ordered that the injunctions created by the April 7 and April 18 orders remain in full force and effect.

Defendants' subsequent motion for reconsideration was denied without further comment on January 18, 1990, and this interlocutory appeal followed.

This appeal concerns $7,888.63 held in defendants' attorney's escrow account. This sum is the balance of the loan proceeds from defendants' $15,000 bank loan obtained to repay $8,300 allegedly wrongfully taken by defendant from the plaintiffs' corporate account for his own use after he had been advised that the business would be terminated on December 31, 1988.

Defendants argue that the court order of December 20 created an injunction which enjoined defendants from using funds they had lawfully obtained from the loan. In their motion to dissolve the injunction, the defendants argued that the plaintiffs have offered no proof to demonstrate that they will suffer immediate and irreparable injury if the funds are released, that such a showing is required for the issuance of an injunction by section 4—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 4—101) and absent such a showing there is no justifiable reason to continue to freeze these funds and to deprive defendants of their use. The defendants further argued that the funds are needed to pay costs of this litigation and other debts.

The defendants contend on appeal that the court's purpose in entering and then subsequently in refusing to dissolve the injunctions of April 7 and April 18 was to impose an equitable attachment on the defendants' loan proceeds and since the injunction here creates an equitable attachment on the funds and the real estate, such a remedy must meet the strict parameters of section 4—101 of the Illinois attachment act (Ill. Rev. Stat. 1987, ch. 110, par. 4—101). The defendants argue that the requisite statutory factors are not present (*Carriage Way Apartments v. Pojman* (1988), 172 Ill. App. 3d 827, 838, 527 N.E.2d 89, citing *Lewis v. West Side Trust & Savings Bank*

(1937), 288 Ill. App. 271, 278, 6 N.E.2d 481) and an attachment is not appropriate.

Defendants refer to that part of the court's December 20 order as error which states:

"It was the intention of this order, that all monies from the $15,000 note be used to repay the Plaintiff for alleged wrong doings by the Defendant. By securing this money in an escrow account, the Court is not pre-judging the issues of this case, but rather protecting the interests of the Plaintiff. From the facts alleged such protection is warranted. If the Court were to release these loan proceeds, any later success by the Plaintiffs could prove to be a hollow victory, in that the defendant would have no funds to pay a judgment. If however, this Court's disposition is in favor of the Defendants', the loan proceeds will be properly returned."

Plaintiffs argue that the temporary restraining order of January 13 prohibited the sale or encumbrance of the Prospect Heights property. We note that the court extended the temporary restraining orders from time to time and denied defendants' motion to dissolve temporary restraining orders in its February 8 order. In the February 8 order, defendants were ordered to return $8,300 wrongfully taken from plaintiffs' account within 30 days of the order. The April 7 and April 18 orders modified the temporary restraining order to permit defendants to encumber the property to secure a loan allegedly required by defendants to be able to return plaintiffs' funds wrongfully diverted by defendants.

Plaintiffs contend that the court properly ordered the loan proceeds funds to be escrowed, thus protecting the funds and the *res* which are the subjects of or relevant to the dispute being litigated. (*Carriage Way Apartments v. Pojman*, 172 Ill. App. 3d at 838, 527 N.E.2d at 96, citing *American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 391 N.E.2d 532.) Because the defendants failed to comply with the January 13 order requiring them to return diverted funds, and since defendants' explanation for noncompliance was an inability to pay unless they secured a loan using the real estate as security to guarantee repayment, the April orders were entered to accomplish both the loan and the protection of the *res*.

Plaintiffs contend the trial court has discretion and the duty to preserve the fund in controversy where the fund or the property is the subject of the relief requested so that the ultimately successful lit-

igant does not win "a meaningless victory." *Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 468-69, 262 N.E.2d 753.

The effect of the April 7 and April 18 orders was to restrain defendants' unlimited control over the property and to subject it to court restrictions during the pendency of the litigation. Plaintiffs argue that defendants now seek to avoid the January 13 order and the April orders as repeated and reaffirmed in the December 20 order, here appealed, by claiming that since funds are now involved the restraints over the control of the property have been transformed into an impermissible equitable attachment on the real estate.

Defendants argue that the funds enjoined are not the subject of the dispute between the parties, since they were the loan proceeds from a second home mortgage loan procured by defendants. In order to be enjoined, the funds must be involved in the controversy and required to be disposed of in the final order of the trial court. (*Exchange National Bank v. Harris* (1984), 126 Ill. App. 3d 382, 466 N.E.2d 1079, citing *Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 262 N.E.2d 753.) Defendants argue that only the first home mortgage loan was co-signed by plaintiff William Roppolo and is the claim raised in count VI of the complaint. Defendants further argue that the funds from the second home mortgage loan have no bearing on the first mortgage loan controversy and therefore are not subject to the injunction. Defendants contend the loans are distinct and separate and their only common thread is that each is secured by the same real estate. They argue the proceeds of the second mortgage are not the subject matter of the dispute between the parties nor are they subject to the disposition of the court as part of its final order.

Defendants cite *American Re-Insurance v. MGIC Investment* (73 Ill. App. 3d at 325) for the proposition that in order to restrain funds, the specific funds at issue must be in dispute between the parties and their disposition must and can be dealt with in the court's final order. They argue that the only criteria met here is that the court enjoined specific funds but that they were not the disputed funds in controversy nor was their disposition appropriate in a final order.

We disagree with defendants' position and therefore affirm the orders of April 7, April 18 and December 20, 1989, and the order of January 18, 1990.

Both parties cite *Carriage Way Apartments v. Pojman* (1988), 172 Ill. App. 3d 827, 527 N.E.2d 89, in support of their respective positions on appeal. Plaintiffs cite the case for the general proposition that a court may restrain a party's control over funds or property which are the subject of or relevant to the issues of the dispute being

litigated. Defendants cite the same case for its holding that taking away a person's control over his property by an injunction in anticipation of a judgment which may or may not be later obtained is "abhorrent" to equitable jurisdiction. *Carriage Way Apartments v. Pojman*, 172 Ill. App. 3d at 838, citing *Lewis v. West Side Trust & Savings Bank*, 288 Ill. App. 271.

■ The court in *Carriage Way* held that the grant of preliminary injunction by the trial court will not be overturned on appeal unless there has been an abuse of discretion. (*Carriage Way Apartments v. Pojman*, 172 Ill. App. 3d at 835.) While the issuance of the injunction is discretionary with the court, before a preliminary injunction will be granted the party seeking this remedy must establish the need to preserve the status quo and the probability of irreparable harm to his rights or property and must also establish the probability of his success on the merits. (*Carriage Way Apartments v. Pojman*, 172 Ill. App. 3d at 835.) The court there ordered proceeds of sales of the subject apartment complex properties owned by the partnership deposited into an escrow account pending the ultimate determination of entitlement of the respective parties.

The *Carriage Way* action sought appointment of an appraiser to determine the value of partnership real estate and assets since the defendant partners had expressed an intention to withdraw from the partnership. While litigation was pending, the partnership business continued and defendants filed an emergency petition for injunctive relief and damages based on conversion and dissipation of funds by plaintiffs. The court ordered deposit of funds into an escrow account. Plaintiffs alleged there, as here, that the injunction entered amounted to a prejudgment attachment and was error.

The court there held that, where the funds which are the subject of the injunction are also the subject matter of the litigation, the issuance of the injunctions is valid, but, where injunction is used for the purpose of taking away control of a person's property in anticipation of a possible judgment, such action violates equitable principles. *Carriage Way v. Pojman*, 172 Ill. App. 3d at 838.

Count VI of the complaint alleges that in July 1987, defendants asked William Roppolo to co-sign a $70,000 mortgage loan on their Prospect Heights home and represented to him that they would sell a parcel of Michigan property to pay off the co-signed note. The complaint further alleged that defendants refused to sell the Michigan property as promised, and that the co-signed mortgage debt is in default, and that as a result Roppolo is liable to the lender for approxi-

mately $70,000. Clearly a second mortgage secured by the same property further jeopardizes Roppolo's position.

■■ We conclude that the real property as security for the first mortgage loan is part of the subject matter of this litigation. In order to maintain the status quo as to the security property, the court acted properly in enjoining the defendants' activity with respect to this realty and any and all loan proceeds the repayment of which is secured by the property.

We find that the injunctions were properly ordered by the court under its statutory authority in the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 11—101) to maintain the status quo during pendency of the litigation to prevent immediate and irreparable injury, loss or damage and that the record supports the conclusion of the court that good cause has been shown for issuance of the injunction restricting defendants' unlimited authority as to the property pending final resolution of the controversy.

For all of the foregoing reasons, the orders of the trial court are affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and McNAMARA, J., concur.