Nos. 2-09-1140 & 2-09-1141 cons.    Filed: 3-26-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| HENSLEY CONSTRUCTION, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 08--L--687 |
| | ) | |
| PULTE HOME CORPORATION, | ) | Honorable |
| | ) | Stephen Sullivan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

| | | |
|---|---|---|
| HENSLEY CONSTRUCTION, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 09--L--139 |
| | ) | |
| DEL WEBB COMMUNITIES | ) | |
| OF ILLINOIS, INC., | ) | Honorable |
| | ) | Robert B. Spence, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

In appeal number 2--09--1140, defendant, Pulte Home Corporation (Pulte), appeals an order of the trial court, Judge Stephen Sullivan presiding, denying Pulte's motion to reconsider and vacate an interlocutory order requiring Pulte to place $229,781.62 into an escrow account pending final resolution of the underlying case, a contract dispute between plaintiff, Hensley Construction, LLC

(Hensley), and Pulte. On appeal, Pulte argues: (1) "The trial court's order of October 7, 2009[,] was reversible error, as it was a refusal to vacate a prohibited equitable attachment in a case in which the 'specific funds exception' does not apply"; (2) "The additional arguments raised by Hensley in its Response to the Motion to Reconsider and/or Vacate were also unavailing"; and (3) "Hensley also failed to carry its burden of proof before the trial court."

In appeal number 2--09--1141, defendant, Del Webb Communities of Illinois, Inc., (Del Webb), appeals an interlocutory order of the trial court, Judge Robert B. Spence presiding, requiring Del Webb to place $97,759.10 into an escrow account pending final resolution of the underlying case, a contract dispute between Del Webb and plaintiff. On appeal, Del Webb argues: (1) "The trial court's order was a prohibited equitable attachment and the 'specific funds exception' does not apply"; (2) "The new arguments raised for the first time in Hensley's Reply to the trial court are also unavailing"; and (3) "Hensley also failed to carry its burden of proof before the trial court."

We consolidated these appeals. We reverse and remand both cases for further proceedings.

## I. FACTS

### A. Overview

Plaintiff is an underground utility business specializing in the installation of water and sewer lines. Pulte and Del Webb are residential construction businesses.[1] In each case, plaintiff entered into a contract with each defendant to provide and install underground utilities in residential home communities. In each case, plaintiff filed a complaint (later amended) against each defendant alleging that plaintiff had performed its obligations under the respective contract and that under the terms of the contract each defendant owed plaintiff money. In each case, plaintiff filed a "Motion[] to Compel

---

[1]Del Webb is a division of Pulte.

Deposit of Retention Funds in Escrow Account." The trial court granted plaintiff's motions and ordered each defendant to deposit funds into an escrow account. The trial court denied Pulte's motion to reconsider and/or vacate. Both defendants filed timely appeals.

### B. Plaintiff v. Pulte

Plaintiff's complaint against Pulte alleged that, although plaintiff had performed all of its obligations under the contract, Pulte "failed to pay for all costs associated with the underground construction services" and that "the remaining amount due and owing to [plaintiff] from Pulte under the agreement is *** ($229,781.62)." Pulte filed an answer denying all material allegations. In its interrogatory answers, Pulte explained, "[p]ursuant to the written contract entered into between Pulte and [plaintiff], the money claimed of is not yet due to be paid to [plaintiff]. This amount will be withheld until Pulte has completed dedication of the improvement with the municipality." The contract between the parties contained an "Underground Utilities Specifications" provision (section 17.2) that provided in relevant part:

"Ten percent (10%) retention will be held until initial Pulte approval. *** After initial approval is granted, retention will be reduced by three percent (3%). Upon final acceptance (dedication) to the respective municipality, the remaining retention will be released."

Plaintiff filed a "Motion to Compel Deposit of Retention Funds in Escrow Account" (motion to compel). In its motion, plaintiff cited the "Underground Utilities Specifications" provision, arguing that "[a]s part of this system, Pulte would retain 10% of the contract price in a retention account segregated for this project and relating to [plaintiff's] work until Pulte accepted [plaintiff's] work on the project." Plaintiff further argued that "[u]pon such acceptance, Pulte would be required to

disburse 7% of the retention amount and hold back 3% until the respective municipality accepted the work."

The trial court granted plaintiff's motion, stating in part that: (1) plaintiff "has established sufficient indicia of a likelihood of success on the merits of its claim to warrant the Court's exercise of its equitable powers so as to preserve the status quo until the matter can be resolved on the merits"; (2) "[I]f the retention funds addressed in the Motion are not safeguarded in an independent escrow account, then substantial and irreparable harm may be caused to Plaintiff due to such funds being dissipated or otherwise compromised"; (3) "This Court finds that the $229,781.62 held by Pulte Homes Corporation in its retention account relating to the Winchester Glen project and which is the remainder alleged to be due and owing to [plaintiff] is and/or would be properly the subject of this Court's final order on the merits of this claim"; and (4) "Pulte Homes Corporation is hereby ordered to deposit into an interest bearing escrow account the $229,781.62 held in its retention account relating to the Winchester Glen project."

Pulte filed a motion to reconsider and/or vacate and attached to its memorandum in support of its motion the affidavit of Bernard Pallardy. Pallardy stated that he was the vice president of land development for Pulte, that Pulte "did not and does not maintain a segregated bank account solely containing retention funds," and that "Pulte similarly did not and does not maintain separate bank accounts holding retention funds for specific projects and/or subcontractors." Pallardy also stated the following in his affidavit. The municipality, the Village of Carpentersville, had retained Smith Engineering Consultants to serve as its consulting engineer on the Winchester Glen project. Smith Engineering had produced a punch list of underground items to be completed before the Village of Carpentersville would give its final acceptance of phase one of the Winchester Glen subdivision,

which consisted of more than half of the entire project. The punch list included broken, cracked, and leaking storm sewer lines. The certificates of insurance that plaintiff had originally provided to Pulte in regard to the Winchester Glen project had expired and plaintiff had failed to provide Pulte with current certificates of insurance for any successor corporation or any subcontractors. In addition, during the first quarter of 2009, plaintiff informed Pulte that plaintiff was no longer an operational business and that there was no progress being made on the Winchester Glen punch list.

The trial court denied Pulte's motion to reconsider and/or vacate. Pulte filed a timely interlocutory appeal of the trial court's denial of its motion to reconsider and/or vacate pursuant to Supreme Court Rule 307(a)(1). 188 Ill. 2d 307(a)(1); see Doe v. Department of Professional Regulation, 341 Ill. App. 3d 1053, 1057-58 (2003).

### C. Plaintiff v. Del Webb

Plaintiff's complaint against Del Webb alleged that, although plaintiff performed all of its obligations under the contract, Del Webb "failed to pay for all costs associated with the underground construction services provided by [plaintiff]" and that "the remaining amount due and owing to [plaintiff] from Defendant Del Webb under the agreement is [$93,759.10]." Del Webb filed an answer denying all material allegations.

Plaintiff filed a "Motion to Compel Deposit of Retention Funds in Escrow Account" (motion to compel). In its motion, plaintiff stated that it was bringing the motion to "preserve the status quo" pending the resolution of the case. Citing the "Underground Utilities Specifications" provision of the contract between the parties (the identical provision it cited in its complaint against Pulte), plaintiff alleged that such provision stated that "Del Webb would retain 10% of the contract price in a retention account segregated for this project and relating to [plaintiff's] work until Del Webb accepted

[plaintiff's] work on the project." Plaintiff further alleged that the provision provided that, "upon such acceptance, Del Webb would be required to disburse 7% of the retention amount and hold back 3% until the respective municipality accepted the work." Plaintiff also alleged that because of the collapsing residential real estate market in the country, including Kane County, "[plaintiff] has substantial concerns regarding the economic viability of Pulte and Del Webb in light of these circumstances and has reasonable concerns that Del Webb may attempt to utilize the [plaintiff's] retention funds to satisfy other debts and that such funds may then not be collectible without substantial additional expense, if at all."

Del Webb's response to plaintiff's motion to compel asserted, in part, that it did not have any "specifically designated retention funds." Del Webb also asserted that plaintiff was no longer operational. It supported this assertion by attaching Pallardy's affidavit,[2] in which Pallardy stated that during the first quarter of 2009 plaintiff informed Pulte that plaintiff was no longer an operational business. Del Webb further asserted that, before the municipality, the City of Elgin, would accept the development project, it would likely issue a punch list of additional work that would have to be completed and that plaintiff "has no means of completing the work."

The parties agree that the trial court used its injunctive powers to order Del Webb to deposit $93,759.10 into an interest-bearing escrow account. The trial court found that plaintiff "established sufficient indicia of a likelihood of success on the merits of its claim, including a property right to funds held in retention by Del Webb relating to the Edgewater project and an equitable lien by agreement as to these funds to warrant the Court's exercise of its equitable powers as to preserve the status quo until the matter can be resolved on its merits." The trial court also found "that if the

---

[2]This is the same affidavit that supported Pulte's motion to reconsider/vacate.

retention funds addressed in the Motion are not safeguarded in an independent escrow account, then substantial and irreparable harm may be caused to Plaintiff due to such funds being dissipated or otherwise compromised." The trial court ordered Del Webb "to deposit into an interest bearing escrow account the $93,759.10 held as retention funds."

Del Webb filed this timely interlocutory appeal pursuant to Supreme Court Rules 303 and 307(a)(1). 155 Ill. 2d R. 303; 188 Ill. 2d 307(a)(1).

## II. ANALYSIS

### A. Scope of Review

In reviewing an interlocutory appeal pursuant to Rule 307(a)(1), the only question before this court is whether the prevailing party made a sufficient showing to sustain the trial court's order granting or denying the interlocutory relief sought. See Mohanty v. St. John Heart Clinic, S.C., 358 Ill. App. 3d 902, 905 (2005).

### B. In Both Cases, the Trial Courts Improperly Granted

### Injunctive Equitable Attachments

On appeal, defendants claim that the trial courts' rulings amount to prejudgment equitable attachments and that plaintiff has failed to establish the requisite elements for those injunctions granted.

A preliminary injunction is a provisional remedy granted to preserve the status quo until the case can be decided on the merits. Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co., 195 Ill. 2d 356, 365 (2001). To establish entitlement to preliminary injunctive relief, the plaintiff must demonstrate (1) a clearly ascertainable right that needs protection; (2) irreparable harm without the protection of an injunction; (3) no adequate remedy at law for the plaintiff's injury; and

(4) a substantial likelihood of success on the merits in the underlying action. Callis, Papa, Jackstadt & Halloran, P.C., 195 Ill. 2d at 365-66. A reviewing court will reverse a trial court's order granting a preliminary injunction only when it constitutes an abuse of discretion. In re Marriage of Davenport, 388 Ill. App. 3d 988, 991 (2009). Our role regarding the trial court's factual findings is limited to determining whether they are against the manifest weight of the evidence. See Appelbaum v. Appelbaum, 355 Ill. App. 3d 926, 933 (2005). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. Best v. Best, 223 Ill. 2d 342, 350 (2005). However, to the extent the court's ruling involves a question of law, our review is de novo. Jones v. Department of Public Aid, 373 Ill. App. 3d 184, 193 (2007).

The second requirement for a preliminary injunction, irreparable harm, "occurs only where the remedy at law is inadequate, meaning that monetary damages cannot adequately compensate the injury and the injury cannot be measured by pecuniary standards." Franz v. Calaco Development Corp., 322 Ill. App. 3d 941, 947 (2001).

In each of these cases, because the only relief requested by plaintiff was monetary, injunctive relief was inappropriate and the relief granted by the trial court was an improper prejudgment equitable attachment. See Calaco, 322 Ill. App. 3d at 948.

An equitable attachment is the restraining of a defendant's control over property in its possession to satisfy a claim not yet reduced to judgment. See Kurti v. Silk Plants Etc. Franchise Systems, Inc., 200 Ill. App. 3d 605, 607 (1990). Attachment is a remedy by which a party's property is secured and held to satisfy a debt that the other party hopes to prove. Starr v. Gay, 354 Ill. App. 3d 610, 615 (2004). Section 4--101 of the Code of Civil Procedure (Code) permits attachment in

only 11 specific circumstances; plaintiff did not plead these circumstances and, further, none apply here. See 735 ILCS 5/4--101 (West 2006). Generally, there is no such process as equitable attachment in Illinois. Bowman v. Dixon Theater Renovation, Inc., 221 Ill. App. 3d 35, 40 (1991). " '[T]he theory of taking away the control of a person's property by means of an injunction for the purpose of anticipating a judgment which may or may not thereafter be obtained by a litigant is abhorrent to the principles of equitable jurisdiction.' " Carriage Way Apartments v. Pojman, 172 Ill. App. 3d 827, 838 (1988), quoting Lewis v. West Side Trust & Savings Bank of Chicago, 288 Ill. App. 271, 278 (1937). The court in Lewis stated:

> " 'If the property of an honest, struggling debtor could be tied up by injunctions upon mere unadjusted legal demands, he would be constantly exposed to the greatest hardships and grossest frauds, for which the law would afford no adequate remedy. *** [T]o prevent ruin to his business pending such litigation, he would be forced into unconscionable compromises involving losses he would be unable to bear.' " Lewis, 288 Ill. App. at 278, quoting Shufeldt v. Boehm, 96 Ill. 560, 564 (1880).

Thus, Illinois courts have consistently forbade such injunctions. See Exchange National Bank of Chicago v. Harris, 126 Ill. App. 3d 382, 386 (1984). The only exception is when the claimant has an interest in specific funds held by the debtor; this is known as the specific funds exception. See Kurti, 200 Ill. App. 3d at 609-11. The funds must be specific to the dispute in question, such as a fund from a trust in question (see Keeshin v. Schultz, 128 Ill. App. 2d 460 (1970)), but not cash proceeds from the sale of real estate (see Pojman, 172 Ill. App. 3d at 838) or trust funds that were not specific to the dispute in question (see Exchange National Bank of Chicago, 126 Ill. App. 3d at 388-89).

Here, it cannot be said that the funds that were ordered deposited were the specific funds in question in the underlying disputes. In its motions, plaintiff alleged that defendants held the disputed funds in "retention account[s] segregated for [the Winchester Glen and Edgewater] project[s] and relating to Hensley's work until [defendants] accepted [plaintiff's] work on the project[s]." However, nothing in the record supports plaintiff's claims that the disputed funds were held in a segregated account for either the Winchester Glen project or the Edgewater project. Further, defendants each attached to their pleadings Pallardy's affidavit stating that Pulte (of which Del Webb is a subsidiary) "did not and does not maintain a segregated bank account solely containing retention funds." Thus, the specific funds exception did not apply and the trial courts abused their discretion by ordering equitable attachments. Moreover, plaintiff failed to establish that it would suffer irreparable harm without the protection of the injunctions or that it had no remedies at law for its alleged injuries.

Plaintiff cites All Seasons Excavating Co. v. Bluthardt, 216 Ill. App. 3d 504 (1991), to support its argument that equitable attachments were proper in these cases. In All Seasons, the appellate court applied the specific funds exception to the prohibition against equitable attachments. All Seasons, 216 Ill. App. 3d at 513. In All Seasons, real property that was part of the subject matter of the underlying litigation was being used by the defendant as security for both a first and a second mortgage. All Seasons, 216 Ill. App. 3d at 513. The appellate court held that it was proper to order the proceeds of the second mortgage to be held in escrow because the real property was a subject of the litigation. All Seasons, 216 Ill. App. 3d at 514. In contrast, in these cases, the funds at issue had no specific connection to the underlying disputes. As we previously determined, plaintiff failed to establish that defendants held the funds at issue in segregated accounts or that the specific funds exception applied in any other regard. Thus, All Seasons does not apply here.

Plaintiff contests the characterization of the trial courts' orders as equitable attachments. Plaintiff contends that it owned the retention funds at issue and that thus it did not need to establish that the funds were segregated or that the specific funds exception otherwise applied. Plaintiff cites the contracts' section 17.2 to support its argument.[3] The relevant portion of that provision provided:

"17.2 Ten percent (10%) retention will be held until [defendants'] initial approval. Initial approval means [defendants] must have as-built drawings, an as-built spreadsheet, and a letter from the Engineer stating that the as-builts are with-in complete compliance of the required tolerances (as presented in section 9), and that a [defendant] Land Manager has walked the community and approved the improvements. After the initial approval is granted, retention will be reduced to three percent (3%). Upon final acceptance (dedication) to the respective municipality, the remaining retention will be released."

The primary objective in interpreting a contract is to give effect to the intent of the parties. Gallagher v. Lenart, 226 Ill. 2d 208, 232 (2007). The best indication of the parties' intent is the contract's language, given its plain and ordinary meaning, and construing the contract as a whole. Gallagher, 226 Ill. 2d at 233. If the language of a contract is unambiguous, the court must derive the parties' intent from the writing itself, without resort to matters extrinsic to the contract. Paul B. Episcope, Ltd. v. Law Offices of Campbell & Di Vincenzo, 373 Ill. App. 3d 384, 391 (2007).

The plain and ordinary language of section 17.2 provides that the final 3% will be released "[u]pon final acceptance (dedication) to the respective municipality." Nothing in the record indicates

---

[3]Plaintiff failed to file the contract that contained section 17.2, the "Underground Utilities Specifications" provision. However, Del Webb stipulated in its reply brief that such provision was contained in a contract that the parties executed on April 6, 2006.

that the respective municipalities (Carpentersville and Elgin) had granted final acceptance. In fact, Pallardy's affidavit revealed that plaintiff was no longer operational. Further, Pallardy stated that Carpentersville had a punch list including broken, cracked, and leaking storm sewer lines, and Del Webb alleged that Elgin was likely to have a punch list of additional work to be completed. Therefore, under the plain and ordinary language of section 17.2 , plaintiff did not own the funds at issue in either case when the trial courts ordered the funds to be held in escrow.

In its argument that it owned the funds at issue, plaintiff argues that the trial courts actually ordered constructive trusts. Plaintiff cites Bates & Rogers Construction Corp. v. North Shore Sanitary District, 92 Ill. App. 3d 90 (1980), to support its argument. In Bates & Rogers Construction, the plaintiff sought a constructive trust, arguing that the defendant withheld 10% of the contract price as security for complete performance of the contract. Bates & Rogers Construction, 92 Ill. App. 3d at 92. The appellate court dismissed the count, which it stated was "confusing for a number of reasons, including the fact that it seeks an equitable remedy, constructive trust, for an action at law clearly compensable in money damages." Bates & Rogers Construction, 92 Ill. App. 3d at 98. Here, plaintiff sought an equitable remedy, equitable attachment, and now contends that the trial courts' orders constitute constructive trusts. However, plaintiff's claims are compensable in money damages. See Bates & Rogers Construction, 92 Ill. App. 3d at 98. Thus, Bates & Rogers Construction is helpful to defendants, not to plaintiff.

We also note that a court may impose a constructive trust to avoid unjust enrichment: when one obtains money to which he is not entitled, under circumstances such that in equity and good conscience he ought not to retain it. See SwedishAmerican Hospital Ass'n of Rockford v. Illinois State Medical Inter-Insurance Exchange, 395 Ill. App. 3d 80, 108 (2009). However, unjust

enrichment is based on an implied contract, and it does not apply here because there were express written contracts that governed the relationships of the parties. See Swedish American Hospital Ass'n of Rockford, 395 Ill. App. 3d at 108. (We note that there is no provision in the express written contracts that the retention funds would be retained in separate interest bearing accounts, which is what the court ordered.)

Plaintiff also characterizes the courts' orders as constructive trusts via equitable liens by agreements, citing Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 164 L. Ed. 2d 612, 126 S. Ct. 1869 (2006). However, Sereboff is distinguishable from these cases because the health plan at issue in Sereboff contained an "Acts of third Parties" provision that "specifically identified a particular fund, distinct from the Sereboffs' general assets." Sereboff, 547 U.S. at 364, 164 L. Ed. 2d at 621, 126 S. Ct. at 1875. Here, plaintiff has identified no particular fund distinct from defendants' general assets. Therefore, Sereboff does not apply. Further, the trial court's finding that there was an equitable lien by agreement between plaintiff and Del Webb is against the manifest weight of the evidence.

Plaintiff also argues that "the situation is analogous to the context of a residential landlord's retention of his/her tenant's security deposit which is to be returned to the tenant at the end of the tenant's lease upon surrendering the leased space in satisfactory condition." However, in plaintiff's example, the landlord held property that belonged to the tenant. Here, plaintiff failed to establish that it owned the retention funds at issue. Thus, plaintiff's security deposit example is not applicable here.

Plaintiff argues that "assuming arguendo that the deposit order [is] construed as some form of attachment, it was still properly entered." Plaintiff cites American Re-Insurance Co. v. MGIC Investment Corp., 73 Ill. App. 3d 316 (1979), to support this argument. However, American Re-

Insurance is distinguishable. In American Re-Insurance, the plaintiff initiated an action for rescission of a re-insurance contract entered into with the defendants. American Re-Insurance, 73 Ill. App. 3d at 318. Along with filing its complaint for rescission of the re-insurance contract, the plaintiff requested permission to deposit with the court funds the defendants claimed to be due and owing pursuant to the contract. American Re-Insurance, 73 Ill. App. 3d at 318. Under court order, the plaintiff deposited such funds, as well as additional funds the defendants had paid to the plaintiff pursuant to the contract. American Re-Insurance, 73 Ill. App. 3d at 318-19. The court acknowledged that the trial court's order was not an equitable attachment, since such an order is unlawful in Illinois. American Re-Insurance, 73 Ill. App. 3d at 325. Yet, the court held the following:

"As we indicated, however, the fund at issue is composed of monies whose past and future payment under the re-insurance [contract] is in dispute, and whose disposition will be dealt with in the trial court's final order. We cannot agree that by taking steps to insure that the monies are preserved until that final ruling, the court abused the exercise of its equitable discretion." American Re-Insurance, 73 Ill. App. 3d at 325.

American Re-Insurance is distinguishable because, as the court itself stated, the trial court did not order an equitable attachment. American Re-Insurance, 73 Ill. App. 3d at 325. The plaintiff requested permission to deposit its own funds that the defendants claimed the plaintiff owed the defendant. Therefore, unlike defendants in the cases at bar, the plaintiff in American Re-Insurance was not being forced to deposit the funds; rather, it did so voluntarily. See Lewis, 288 Ill. App. at 278. Accordingly, the reasons behind the prohibition of equitable attachment were not frustrated. In contrast, plaintiff here sought the attachment of defendants' property prior to proving its claims.

-14-

Certainly, defendants did not volunteer to deposit the funds at issue into escrow accounts. Therefore, American Re-Insurance does not apply.

Plaintiff contends that the facts here are more compelling than those in American Re-Insurance because: (1) here plaintiff "actually earned the funds"; and (2) if this court reversed the trial courts' orders, plaintiff would suffer irreparable harm because "there is a substantial likelihood that [defendants] might use [the funds] as security for some other debt or otherwise dissipate these funds" or defendants might become insolvent or cease operations.

First, we have already determined that, under the terms of the contracts, plaintiff did not earn the remaining 3% of either project, because plaintiff failed to establish that the municipalities gave their approvals of the projects.

Second, plaintiff failed to establish that denials of its motions for injunctive relief would cause irreparable harm. In its motions to compel, plaintiff made only general allegations regarding the poor condition of the residential housing market in Kane County, Chicago, and the country, and it noted that some of defendants' competitors had filed for bankruptcy. Plaintiff attached the affidavit of Kevin Hensley, who stated that he was "concerned" that the money being held in retention for the projects would be "used for purposes other than to pay [plaintiff]." Pulte's Securities and Exchange Commission (SEC) filing stated that it had been negatively affected by the "weakened demand for new homes"; had "experienced a net loss in each quarter since the fourth quarter of 2006"; and "expected these trends to continue *** and the majority of the markets we serve to remain challenging throughout 2009." However, Pulte's vice president of finance stated in an affidavit that Pulte was not having any problem meeting its financial obligations. Pulte's 2008 annual report stated

that "[w]e ended with $1.66 billion in cash and no debt." Del Webb attached these same documents[4] to its response to plaintiff's motion to compel. Thus, the trial courts' findings in both cases, that irreparable harm would be caused to plaintiff because the funds at issue could be dissipated or otherwise compromised, are against the manifest weight of the evidence.

In addition, plaintiff argues that the trial courts properly granted the injunctions because section 17.2 of the parties' contracts cannot be interpreted as proper conditions precedent. We need not address the merits of this argument because we have already determined that plaintiff failed to establish other requirements for the injunctions, namely, that plaintiff would suffer irreparable harm without the protection of the injunctions and that it had no adequate remedy at law for its alleged injuries. See Callis, Papa, Jackstadt & Halloran, P.C., 195 Ill. 2d at 366, 371.

CONCLUSION

Thus, in appeal number 2--09--1140, the trial court abused its discretion when it denied Pulte's motion to reconsider and/or vacate its order granting plaintiff's motion to compel. Similarly, in appeal number 2--09--1141, the trial court abused its discretion by granting plaintiff's motion to compel.

The judgments of the circuit court of Kane County are reversed and remanded for further proceedings.

Reversed and remanded.

ZENOFF, P.J., and BOWMAN, J., concur.

---

[4]Because Del Webb is a division of Pulte, their SEC annual reports are contained together.