2020 IL App (1st) 192417-U

SIXTH DIVISION
June 5, 2020

No. 1-19-2417

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF RHODA SHAPIRO, Deceased | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| (ALAN FRYMAN and HOLLY FRYMAN, as co-executors of the Estate of Rhoda Shapiro, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | Nos. 16 P 3515 & 16 CH 10677 (cons.) |
| v. | ) | |
| RICHARD JOSEPH LADON, | ) | |
| | ) | Honorable Daniel B. Malone, |
| Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Circuit court did not abuse its discretion when it denied plaintiffs' motion to require defendant to deposit disputed funds in escrow; affirmed.

¶ 2    Plaintiffs, Alan Fryman and Holly Fryman (Alan and Holly), appeal under Illinois Supreme Court

Rule 307(a)(1) (eff. Nov. 1, 2017) the denial of their motion to require defendant, Richard Joseph

Ladon (Ladon), to deposit disputed funds into escrow. On appeal, plaintiffs contend that they are

entitled to a preliminary injunction even though money is the subject of the injunctive relief and that they otherwise met the requirements for a preliminary injunction. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                    A. Plaintiffs' Allegations and Initial Circuit Court Proceedings

¶ 5      As we noted in the parties' previous appeal (*In re Estate of Shapiro*, 2019 IL App (1st) 180595-U (*Shapiro I*)), plaintiffs are the son and daughter of Rhoda Shapiro (Rhoda), who died, testate, on May 14, 2016. Rhoda's will was admitted to probate by order of the circuit court of Cook County, and plaintiffs were appointed co-executors of Rhoda's estate. This case concerns a trust that was executed by Rhoda's late husband, Sheldon Shapiro, and named Rhoda a beneficiary. The following background is drawn from *Shapiro I* and plaintiffs' amended complaint.

¶ 6      Sheldon had owned and operated Arrow Chevrolet, a south suburban car dealership. Sheldon died on March 18, 1990. In part, his trust provided:

> "If my wife survives me, the trustee as of my death shall distribute to her from the principal of the trust estate, including any property added thereto by my will, a <u>pecuniary</u> amount equal to <u>1/3rd</u> of an amount equal to:
>
>> The value of my gross estate as defined under Internal Revenue Code ¶ 2031, less the aggregate amount of deductions under Internal Revenue Code ¶ 2053 and ¶ 2054 and less the amount of the Federal estate tax not reduced by the credit for state death taxes under Internal Revenue Service Code ¶ 2011;
>
> less the aggregate amount of marital deductions, if any, allowed for interests in property passing or which have passed to my wife otherwise than by the terms of this article, all as finally determined for Federal estate tax purposes. ***

The trustee in his sole discretion shall select and distribute the cash, securities and other property which shall constitute the distribution, employing for the purpose values current at the time of distribution. No asset or proceeds of any asset shall be selected for my wife as to which a marital deduction is not allowable. The selection shall not be subject to question by any beneficiary, and no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes. This distribution shall carry with it a proportionate part of the income of the trust estate from the date of my death to the date of distribution." (Emphasis in original.)

¶ 7     The balance of the trust estate was to be distributed to Sheldon's children from his first marriage, Jules Shapiro and Deborah Weinstein. The trust named Ladon as one of the successor trustees. Sheldon was survived by Rhoda, Jules, and Deborah.

¶ 8     At the time of his death, Sheldon's estate included parcels of real estate located in Midlothian, Illinois, as well as promissory notes from Arrow Chevrolet and Arrow Chrysler payable to Sheldon's estate. Rhoda retained an attorney to represent her interests in the estate. Ladon became an acting trustee and attorney for Sheldon's estate for negotiating and carrying out the distribution that was due to Rhoda. Plaintiffs allege that Ladon calculated Rhoda's one-third distribution as $1,184,831, and proposed paying Rhoda partially in cash and partially by an in-kind conveyance of the non-cash assets of the estate. Rhoda would be paid via a cash distribution of $416,752, and a one-third interest in real estate held by the trust, which had a then-present day value of $768,079.

¶ 9     According to plaintiffs, in late 1991, Ladon executed a document entitled "Escrow Agreement," which memorialized Rhoda's interest in the real estate. The escrow agreement stated

that it was entered into by Rhoda, the trust, and the then-acting trustees, who would act as the escrow agent, and further stated in part as follows. Rhoda and the trust were beneficiaries of Sheldon's estate and the estate's assets included certain parcels of real property and notes that were payable to the estate. Rhoda was entitled to receive a one-third interest and the trust was entitled to receive a two-thirds interest in and to those properties and notes. The escrow agent would collect monthly rents due on the properties, pay all monthly mortgage payments, pay an outstanding note balance, and collect all monies due and payable under two other notes. "Not less frequently than monthly," the escrow agent was to disburse one-third of the net estate proceeds to Rhoda and two-thirds of the net estate proceeds to the trust, where "net proceeds" meant all sums received via rents and monies due less sums payable. The escrow agent was required to "maintain complete and accurate books and records of all monies received from, and paid on behalf of, the Estate Assets ***."

¶ 10    Plaintiffs alleged that eventually, Ladon was the only remaining trustee of the trust and the only remaining escrow agent under the escrow agreement. In plaintiffs' view, from 1991 until Rhoda's death, Ladon, as escrow agent, made monthly distributions to Rhoda for her one-third share of the net income of the properties. After plaintiffs learned in 2015 that certain properties had been sold, including one for $2.8 million, Ladon wrote a letter to Rhoda that explained that Rhoda, Jules, and Deborah were each allocated one-third of the sale price and one-third of the costs of the sale. Ladon made various deductions and appended supporting schedules. Schedule #1 was entitled "Reconciliation of Rhoda," labeled as "Account 420-02," and indicated the amount that Rhoda owed the trust. Schedule #2 was entitled "Analysis of Basis—Account 130.02" and indicated Rhoda's one-third share of capitalized costs. Also in the record is a document entitled "2015—Analysis of Beneficiary Account," which was organized by columns for Rhoda, Jules, and

Deborah, and showed the expenses, net income, and how much was due to each person, among other entries.

¶ 11    Plaintiffs further alleged that Alan requested a breakdown of $396,404 in selling costs and advances to Rhoda and asked to review the detailed accounting records of the trust. Ladon provided a revised estimate of Rhoda's final distribution that included money for her one-third share in two other properties. In a letter dated January 27, 2016, Ladon disclosed that only $97,879.25 represented actual costs paid from the proceeds of the sale of the property. The rest of the costs included a $126,750 consulting fee to Ladon, a $113,774 consulting fee to Ladon's business associate, $43,000 in legal fees to Ladon, $10,000 in legal fees to Ladon's daughter, and a $5,000 bonus to Ladon's secretary.

¶ 12    On February 8, 2016, Alan received a letter from Ladon with a check payable to Rhoda for $573,057.95. On the back of the check was a restrictive endorsement providing that the check was "IN FULL PAYMENT & RELEASE OF ANY & ALL CLAIMS AGAINST THE SHAPIRO TRUST." Alan's counsel informed Ladon that the check would be returned and continued to ask questions related to records and calculations.

¶ 13    Plaintiffs alleged that after Rhoda died on May 14, 2016, Ladon's counsel stated that Alan's power of attorney lapsed on death and the trust documents would be withheld until further notice. A probate estate was opened for Rhoda with letters of office issued to Alan and Holly. On June 24, 2016, Ladon sent a letter stating that he and his counsel had already charged nearly $50,000 against Rhoda's estate's share of the trust proceeds for responding to the "constant demands" of Alan's counsel.

¶ 14    In August 2016, plaintiffs unsuccessfully sought a temporary restraining order prohibiting the disbursement of assets generated from the sale of the real estate property.

¶ 15    On September 29, 2017, plaintiffs filed an amended verified complaint that asserted causes of action for: (1) a declaratory judgment to declare the respective rights and obligations of the parties under the escrow agreement; (2) an accounting; (3) breach of fiduciary duty; (4) breach of contract; (5) promissory estoppel; (6) equitable estoppel; (7) common law fraud; and (8) removal of Ladon as the escrowee and for a preliminary injunction. Ladon filed a motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)), contending in part that the escrow agreement was null and void and Rhoda actually received her entire distribution in cash. Ladon asserted that Rhoda had been vastly overpaid because she was entitled to receive a pecuniary amount equal to $1,184,831 under the trust, but ultimately received almost $5,000,000 from 1990 to 2015.

¶ 16    On November 3, 2017, plaintiffs filed a motion to require Ladon to deposit disputed funds into escrow (hereinafter escrow motion). The sum that plaintiffs wanted deposited, $573,057.95, represented the amount that Ladon calculated and remitted to Rhoda as her "Full and Final Distribution." Plaintiffs maintained that the deposit of the disputed funds into escrow, pending the full resolution of the action, was necessary to preserve the *status quo* and prevent further dissipation of the escrow funds account to the irreparable damage of the estate. Plaintiffs raised the specific funds exception, noting that a trial court may order the deposit of disputed funds with the court pending the outcome of litigation where the specific funds that are the subject of the order are also the subject of the claim asserted by the plaintiffs.

¶ 17    On March 6, 2018, the circuit court dismissed plaintiffs' complaint in its entirety with prejudice under sections 2-619(a)(9) and 2-615 of the Code (735 ILCS 5/2-619(a)(9), 2-615 (West 2016)). As for dismissal under section 2-619(a)(9), the court found in part that the escrow agreement was null and void because it increased Rhoda's distribution and enlarged the powers of

the trustee. The court further stated that Rhoda's estate's interest in the trust should have ended in June 1995, after she received a total amount above the approximately $1.1 million she was allowed under the trust. The court dismissed plaintiffs' other claims under section 2-615 of the Code.

¶ 18     B. Appeal from Dismissal Under Sections 2-619(a)(9) and 2-615 of the Code

¶ 19     Plaintiffs appealed to this court, contending in part that their amended complaint was incorrectly dismissed under section 2-619(a)(9) because the escrow agreement was valid. After discussing the escrow agreement and plain language of the trust, this court concluded that "it has not been shown that the escrow agreement is null and void." *Shapiro I*, 2019 IL App (1st) 180595-U, ¶ 39. Two matters were not addressed: 1) whether the property transfer occurred, because that informed whether the escrow agreement was breached and not whether it was valid when executed, and 2) whether the parties later abandoned the escrow agreement, because that was not an easily proved issue of fact that could be decided on a section 2-619 motion. *Id*. ¶ 38.

¶ 20     Turning to the claims that were dismissed under section 2-615 of the Code, this court found that plaintiffs sufficiently stated claims for an accounting under the trust and escrow agreement, breach of fiduciary duty under the escrow agreement, and breach of contract under the escrow agreement. We affirmed the section 2-615 dismissal of plaintiffs' claims for a declaratory judgment, promissory estoppel, equitable estoppel, common law fraud, and to remove Ladon as escrowee.

¶ 21     This court also found that plaintiffs' request in their amended complaint for a preliminary injunction was properly denied. Plaintiffs sought a preliminary injunction "enjoining and prohibiting the withdrawal, disbursement, or other dissipation of the funds now held by Defendant which are subject to the Escrow Agreement." *Id*. ¶ 74. We stated that plaintiffs' claim did not

qualify for an injunction because an injunction is not permitted when the claimant seeks funds that are cash proceeds from the sale of real estate. *Id*. ¶ 77.

¶ 22    Plaintiffs also contended in their first appeal that the circuit court should have held a hearing on their escrow motion, which had requested a preliminary injunction to require Ladon to deposit disputed funds—which totaled $573,057.95—into escrow. *Id*. ¶ 80. We did not address the merits of plaintiffs' escrow motion because the circuit court had not ruled on it. *Id*. ¶ 81. We also noted that plaintiffs' escrow motion sought different relief than the injunctive relief requested in plaintiffs' amended complaint. *Id*. ¶ 82. The case was remanded for further proceedings.

¶ 23                    C. Proceedings on Remand and Evidentiary Hearing

¶ 24    On August 20, 2019, Ladon filed a response to plaintiffs' escrow motion, asserting in part that the requested relief was unprecedented because plaintiffs sought the provisional turnover of funds from the trust, which was a non-party and against which plaintiffs had not asserted any claims. Ladon also stated that the specific funds exception did not apply because there was not a pool of funds that could easily be handed over and there had never been segregated accounts for trust beneficiaries. Ladon further asserted that plaintiffs were not likely to prevail on the merits.

¶ 25    In reply, plaintiffs asserted in part that Ladon established subaccounts for Rhoda to separately account for her interest in the real estate and notes. Also, Ladon always maintained separate ledgers to account for the sums due Rhoda for her share of the profits of the property and to account for expenses payable by Rhoda. Plaintiffs further maintained that payments to Rhoda after 1995 were not a mistake. Plaintiffs posited that Ladon discovered his alleged mistake in paying Rhoda after 1995 only after Rhoda died and her heirs challenged the fees he paid to himself.

¶ 26    An evidentiary hearing was held on October 23, 2019. Ladon testified as an adverse witness for plaintiffs. Ladon explained that "[t]here was an account set up for the beneficiaries *** [I]t was

an account that took various factors into account or events *** as to what their, say, capital account or interest was *** in the property." Ladon agreed with counsel's description of the system as being similar to the way, within a partnership bank account, the capital account of each partner could be separately tracked. A 1995 document titled "RJL Notes on Account," was referenced. That document mentioned that account 501.02 was "Rhoda's Basis Adj." and account 150.01 was "Rhoda's Basis on Note & R.E." The amount due Rhoda was account 104.02. At one point, prior years' entries were reclassified into a new account, numbered 501.01. The 1995 document stated, "How this account will be used and its final closure will have to be determined at a future time." When asked a question about the 1995 document, Ladon stated, "[T]his is something that was prepared in *** 1995. I'm sorry. My memory isn't quite that good. I'd have to look at it and try to reflect upon it."

¶ 27    Ladon also testified that he had mistakenly believed that Rhoda was a one-third beneficiary of Sheldon's trust. Further, he never took the required steps to divide up the ownership of the property as contemplated in the escrow agreement because doing so would have led to chaos and an inability to control, sell, or dispose of the property. After the April 2016 check to Rhoda was rejected, Ladon re-read the trust agreement and concluded that Rhoda was overpaid. Ladon stated that Rhoda was supposed to receive a pecuniary amount "in the nature of a bequest and not of a money bequest and not of an interest *** in the fund." Ladon acknowledged that he had paid himself fees as a trustee and he was paying his attorney.

¶ 28    When questioned by his own counsel, Ladon identified the most current statement of the trust from its account at TD Ameritrade, which had a balance of $1,713,475.99 as of September 30, 2019. In the time since plaintiffs had filed a motion for a temporary restraining order and the escrow motion, Ladon had made distributions to Jules and Deborah and paid his own trustee and

legal fees. The over $1.7 million balance included the returned check from Rhoda—which was for $573,057.95—because the funds were never taken out and remained in the trust account. The TD Ameritrade statement indicated that the account was composed of an insured deposit account and stocks. Ladon denied that he would take money out of the account for his personal use and noted that he was bound by the terms of his obligation under the trust.

¶ 29     On October 29, 2019, the court entered a written order that denied plaintiffs' escrow motion. The court observed that Ladon "was an elderly gentleman whose memory and focus diminished during the last hour of his testimony." Ladon had trouble remembering facts, but the court "found his confusion to be genuine." The court found that the specific funds exception did not apply because the assets of the trust were primarily proceeds from the sale of real estate. Further, plaintiffs did not show irreparable harm, an absence of an adequate remedy at law, or a likelihood of success on the merits. According to Ladon's evidence, the funds in the estate of $1.7 million far exceeded the $573,057.95 in dispute. Even if the funds were placed beyond the court's jurisdiction, plaintiffs would have an available remedy, including pursuing an action against Ladon individually. Moreover, plaintiffs did not explain how Rhoda was entitled to receive a pecuniary amount equal to more than one-third the value of Sheldon's estate. The court noted that plaintiffs incorrectly interpreted *Shapiro I* as finding that the escrow agreement was valid. The court added whether the escrow agreement was valid and enforceable was still an ultimate question of fact for the circuit court to determine.

¶ 30     On November 26, 2019, plaintiffs filed a notice of interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 31                                   II. ANALYSIS

¶ 32                                   A. Preliminary Issues

¶ 33 We first address two preliminary issues the parties raise on appeal. First, Ladon asserts that this court should strike plaintiffs' opening brief and dismiss the appeal because plaintiffs used disrespectful language to challenge the circuit court's order. Ladon cites Rule 8.2(a) of the Illinois Rules of Professional Conduct, which states, "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge ***." (eff. Jan. 1, 2010).

¶ 34 Plaintiffs' brief was at times unnecessarily harsh towards the trial judge. Still, plaintiffs did not attack his integrity and so did not violate Rule 8.2(a). See *Harroun v. Addison Police Pension Board*, 372 Ill. App. 3d 260, 266 (2007) (making a distinction between attacking a trial court's reasoning and "impugning the judge's integrity," and finding troubling a statement that "intimated that the trial court's decision was designed to 'curry favor with constituents' "). We caution plaintiffs to use more care in challenging the trial court's reasoning, but striking plaintiffs' brief or dismissing the appeal is unwarranted.

¶ 35 The second preliminary issue was raised by plaintiffs, who contend that Ladon's statement of facts violates Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018) because it misrepresents facts and is an extension of his argument. An appellee is not required to submit a statement of facts, but if he does so, he must comply with Rule 341(h)(6) (*Hulbert v. Brewer*, 386 Ill. App. 3d 1096, 1100 (2008)), which provides that a statement of facts must be "stated accurately and fairly without argument or comment" (Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018). Certain parts of Ladon's statement of facts cross the line into argument. Still, Ladon's violation of Rule 341(h)(6) is not so flagrant as to hinder our review. We have reviewed the entire record. We will not strike Ladon's statement of facts in its entirety, but we will disregard any fact or claim not supported by the record. See *Hulbert*, 386 Ill. App. 3d at 1101.

¶ 36                                    B. Escrow Motion

¶ 37    We next turn to plaintiffs' argument that their escrow motion should have been granted. Plaintiffs' motion requested a preliminary injunction, which is a provisional remedy granted to preserve the *status quo* until the case can be decided on the merits. *Hensley Construction, LLC v. Pulte Home Corp.*, 399 Ill. App. 3d 184, 190 (2010). A preliminary injunction is an extraordinary remedy that should only be granted when the need is clear. *Franz v. Calaco Development Corp.*, 322 Ill. App. 3d 941, 946 (2001). The party seeking a preliminary injunction must demonstrate: 1) a clearly ascertained right in need of protection, 2) irreparable injury without the injunction, 3) no adequate remedy at law, and 4) a likelihood of success on the merits. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). The party seeking the preliminary injunction must demonstrate a *prima facie* case "that there is a fair question as to the existence of the rights claimed, that the circumstances lead to a reasonable belief that the plaintiff probably will be entitled to the relief sought, and that the matters should be kept in the *status quo* until the case can be decided on the merits." *People ex rel. White v. Travnick*, 346 Ill. App. 3d 1053, 1060 (2004). The failure to establish any element requires the court to deny the preliminary injunction. *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 40.

¶ 38    Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) allows interlocutory appeals from a grant or denial of a preliminary injunction. On review, "the only question *** is whether there was a sufficient showing made to the trial court to sustain its order." *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399 (1993). In the circuit court, a hearing on a motion for a preliminary injunction does not determine any factual issue, and on appeal, the appellate court does not decide controverted questions or fact or the merits of the case. *Maday*, 2018 IL App (1st) 180294, ¶¶ 40-41. The decision to grant or deny a preliminary injunction is reviewed for an abuse of discretion

(*Mohanty*, 225 Ill. 2d at 62-63), which occurs "only when the trial court's ruling is arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the trial court's view" (*Roach v. Union Pacific R.R.*, 2014 IL App (1st) 132015, ¶ 20).

¶ 39    Generally, injunctive relief is not available where the only relief requested is monetary. *Grower Service Corp. v. Brown*, 204 Ill. App. 3d 532, 535 (1990). In that scenario, the injunction resembles a prejudgment attachment (*id.*), in which a party's property is secured and held to satisfy a debt that the other party hopes to prove (*Bowman v. Dixon Theater Renovation, Inc.*, 221 Ill. App. 3d 35, 40 (1991)). "Illinois courts have consistently forbade such injunctions." *Hensley Construction, LLC*, 399 Ill. App. 3d at 191. An exception, which plaintiffs rely on, is known as the specific funds exception, which permits an injunction when the funds that are the subject of the injunction are also the subject of the dispute. *Grower Service Corp.*, 204 Ill. App. 3d at 535. The party seeking the injunction must have an interest in specific funds held by the other party. *Bowman*, 221 Ill. App. 3d at 40.

¶ 40    In arguing that the specific funds exception applies to the funds that plaintiff seek to have deposited in escrow, plaintiffs assert that the key factor is whether the funds are identifiable and have been accounted for separately. Plaintiffs point to evidence that Ladon established subaccounts to separately account for Rhoda's interest in the real estate and notes.

¶ 41    It is not enough for the funds to be identifiable and accounted for separately. Further, it was not clearly explained how Ladon used the many different subaccounts that appeared in the record. For the exception to apply, the party must have a specified interest in exact funds and not seek a general sum. *Estes v. Smith*, 244 Ill. App. 3d 681, 686 (1993) (specific funds exception did not apply where the plaintiffs were not entitled to any specific $30,000, but just the sum of $30,000 plus interest); *Grower Service Corp.*, 204 Ill. App. 3d at 535 (specific funds exception did not

apply where the plaintiff had no specified interest in the $200,000 sale proceeds that are the subject of the injunction and merely sought satisfaction of its debt with interest); *Kurti v. Silk Plants Etc. Franchise Systems, Inc.*, 200 Ill. App. 3d 605, 610 (1990) (specific funds exception not available where amount ordered into escrow merely equaled the monies that the plaintiffs sought in their complaint).

¶ 42     The record here indicates that plaintiffs do not seek funds in which they have a specified interest. Rather, plaintiffs seek a general sum of money. As stated in their claim for breach of fiduciary duty, plaintiffs state they suffered loss of income, unnecessarily incurred expenses, and requested "damages in an amount equal to the Estate's 1/3rd share of the net proceeds of the sale of the Income Property and other such amounts as the Court finds to be just compensation for the damages." In their claim for breach of contract, plaintiffs again state that they suffered loss of income, unnecessarily incurred expenses, and requested "damages in an amount in excess of $600,000 or such other amount as the Court finds to be just compensation for the damages." Plaintiffs seek a sum of money that is allegedly due to them. Injunctive relief would be improper. See *Franz*, 322 Ill. App. 3d at 948 (even where controversy concerned conveyance of land, injunction was not appropriate where the complaint alleged financial injury by conveying the land at too low of a price).

¶ 43     Ladon asserted in his brief that the law-of-the-case doctrine applies to our discussion of the specific funds exception in *Shapiro I*. The law-of-the-case doctrine "bars relitigation of an issue previously decided in the same case." *Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, ¶ 8. In *Shapiro I*, we found that the circuit court correctly denied plaintiffs' request in their amended complaint for an injunction because the specific funds exception does not apply to cash proceeds from the sale of real estate. 2019 IL App (1st) 180595-U, ¶ 77 (citing *Hensley*

*Construction, LLC*, 399 Ill. App. 3d at 191 (citing *Carriage Way Apartments v. Pojman*, 172 Ill. App. 3d 827, 838 (2010)). That holding is not the law of the case. A rule established as controlling in a particular case will continue to be the law of the case if the facts remain the same. *People v. Patterson*, 154 Ill. 2d 414, 468 (1992). The facts are not the same here. The injunction we addressed in *Shapiro I*, which was requested in the amended complaint, differed from the injunction requested in the escrow motion. Moreover, we did not address the escrow motion because the circuit court had not ruled on it. *Shapiro I*, 2019 IL App (1st) 180595-U, ¶¶ 81-82. The law-of-the-case doctrine does not apply.

¶ 44     We will also comment on *Pojman*, 172 Ill. App. 3d, because it was referenced in *Shapiro I* and both parties contend the case supports their position. In *Pojman*, a real estate partnership was involved in the purchase, lease, development, and sale of an apartment complex. *Id*. at 830. The defendants allegedly gave notice that they intended to withdraw from the partnership. *Id*. According to the defendants, the partnership property was sold and all proceeds from the sale were distributed without paying the defendants their proportional share. *Id*. at 831. After the defendants filed an emergency petition for injunctive relief, the court entered an order that required the plaintiffs to deposit into an escrow account, or several escrow accounts, the aggregate sum of $1,249,000. *Id*. at 832. The plaintiffs filed a notice of appeal from that order. *Id*. In a subsequent proceeding, the court amended the order and reduced the amount to be segregated. *Id*. at 833. The plaintiffs later filed a second notice of appeal. *Id*. at 834.

¶ 45     On appeal, the appellate court found that the trial court did not have jurisdiction to modify the first order and the parts of the second order that modified the total amount to be posted were void. *Id*. at 835. Reviewing the first order that required the plaintiffs to deposit money into escrow, the appellate court found that order was an improper prejudgment attachment because it did not

identify the specific funds to be deposited in escrow. *Id*. at 838-39. The funds that were ordered deposited were not related to the case. *Id*. at 839. The appellate court further stated that even if the order was not a prejudgment attachment, the injunction was still improper because the defendants failed to show there was an inadequate remedy at law. *Id*. *Pojman* has been cited for the proposition that cash proceeds from the sale of real estate do not qualify for the specific funds exception. See *Hensley Construction, LLC*, 399 Ill. App. 3d at 191; *Grower Service Corp.*, 204 Ill. App. 3d at 535. As stated above, we relied on that proposition in *Shapiro I*.

¶ 46    As a clarifying note, plaintiffs incorrectly state that the primary reason the injunction was reversed in *Pojman* was jurisdictional. While parts of the second order for injunctive relief were invalid for lack of jurisdiction, the first order was reviewed on the merits by the appellate court and was reversed for reasons unrelated to jurisdiction. The appellate court found that the injunction was improper because the order did not identify specific funds to be deposited in escrow. *Pojman*, 172 Ill. App. 3d at 838-39. The order merely required the plaintiffs to deposit an aggregate sum. *Id*. at 832. In that vein, "cash proceeds from the sale of real estate" can be interpreted as a general sum of money in which the claimant does not have a specific interest. *Pojman* is consistent with our analysis and conclusion that plaintiffs do not qualify for the specific funds exception.

¶ 47    There are additional reasons to affirm the circuit court's denial of the escrow motion. Plaintiffs did not show that without an injunction, they will suffer irreparable harm or do not have an adequate remedy at law. In arguing to the contrary, plaintiffs contend that the circuit court erroneously perceived plaintiffs' claim as being for a one-third share of Sheldon's trust, and not for the share of the real estate that Rhoda owned. Plaintiffs contend that the $1.7 million in the trust does not establish an adequate remedy because Rhoda is not a trust beneficiary. Plaintiffs also

assert that because the funds that were at one time made payable to Rhoda are now being held with the general assets of the trust, the funds could potentially be placed out of plaintiffs' reach.

¶ 48    Initially, we note that we are not bound by the circuit court's reasoning and may affirm on any basis supported by the record. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11. Irreparable harm occurs only where the remedy at law is inadequate, in that monetary damages cannot adequately compensate the injury or the injury cannot be measured by pecuniary standards. *Shodeen v. Chicago Title & Trust Co.*, 162 Ill. App. 3d 667, 673-74 (1987). According to Ladon's testimony at the evidentiary hearing, Rhoda's share of the proceeds from the sale of the real estate are being held in the trust account. Plaintiffs' complaint requested damages beyond the $573,057.95 referenced in the escrow motion, including for lost income caused by Ladon's excessive fees. As of September 30, 2019, the trust account had over $1.7 million, which is well more than $573,057.95. The $1.7 million figure already reflected the alleged payments that Ladon made to himself and payments to Jules and Deborah. As noted, plaintiffs seek only a general sum and not a specific $573,057.95. There are ample funds from which to compensate plaintiffs if they are successful. Otherwise, plaintiffs can recover from Ladon personally. Further, plaintiffs' claims are capable of being measured and corrected by an award of money damages. See *id*. at 674 (breach of contract is capable of being measured and corrected by an award of money damages).

¶ 49    As an aside, we take no position on whether the funds allegedly due to Rhoda were improperly managed in the trust account, since that question is beyond the scope of this appeal. See *Maday*, 2018 IL App (1st) 180294, ¶ 41 (appellate court may not decide questions of fact or the merits of the case on a Rule 307(a)(1) appeal).

¶ 50    Plaintiffs also suggest that Ladon was a faithless trustee and paid himself high fees, which puts the disputed funds in jeopardy. Contrary to Ladon's suggestion, plaintiffs have not forfeited

this argument. While we require parties to preserve issues or claims for appeal, we do not require them to limit their arguments on appeal to the same arguments that were made below. *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. Still, plaintiffs' argument is not persuasive. To warrant injunctive relief, "the damage sought to be enjoined must be likely and not merely possible." *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry.*, 195 Ill. 2d 356, 371 (2001). In spite of Ladon's alleged payment of excessive fees to himself, the trust account still has ample money to compensate plaintiffs. There is no evidence that Ladon will dissipate the trust account to the extent that damages will be unavailable. An injunction will not be granted because a plaintiff is apprehensive " 'that some illegal act will be done.' " *Id*. at 372. Further, plaintiffs' concern that due to Ladon's advanced age, it is foreseeable that he could die or become incapacitated, and a claim against his estate alone would not reach the funds, is too speculative to amount to irreparable harm. Injunctive relief is not granted " 'merely to allay the fears and apprehensions or to soothe the anxieties of the parties.' " *Id*. at 371. Plaintiffs did not sufficiently demonstrate a need for a preliminary injunction and the circuit court did not abuse its discretion by denying their escrow motion.

¶ 51                                    III. CONCLUSION

¶ 52    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 53    Affirmed.